**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**William CHERRY, Defendant–Appellant.**

No. 90–2427.

United States Court of Appeals,
Seventh Circuit.

Argued May 10, 1991.

Decided July 26, 1991.

Rehearing and Rehearing En Banc
Denied Aug. 22, 1991.

Lance C. Malina, Asst. U.S. Atty., Office of the U.S. Atty., Criminal Div., Barry R. Elden, Asst. U.S. Atty., Office of the U.S. Atty., Criminal Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellee.

Jeffrey B. Steinback, Leonard Goodman, Genson, Steinback & Gillespie, Chicago, Ill., for defendant-appellant.

Before BAUER, Chief Judge, POSNER and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Following a bench trial, William Cherry was convicted of violating 18 U.S.C. § 2242(1) (sexual abuse) and 18 U.S.C. § 2243(a) (sexual abuse of a minor). The district court sentenced him to 120 months' imprisonment followed by three years of supervised release. In this appeal, Mr. Cherry contends that section 2242(1) is void for vagueness on its face and as applied. He also challenges the district court's admission of two statements that he contends are inadmissible hearsay. Finally, Mr. Cherry argues that the district court erred

in enhancing his sentence for obstruction of justice under section 3C1.1 of the United States Sentencing Guidelines (U.S.S.G. or the guidelines). For the reasons set forth in this opinion, we affirm his convictions and affirm the judgment of the district court as amended.

# I

## BACKGROUND

### A. *Facts*

On June 14, 1989, the thirteen year-old victim, YW, arrived to spend the summer with her aunt and uncle at Fort Sheridan, a United States military base in Illinois. YW became friends with Teneisha Mercer, Mr. Cherry's stepdaughter. Mr. Cherry was a twenty-seven-year-old civilian government employee residing with his family at Fort Sheridan, two houses away from YW's aunt and uncle. On the evening of July 9, 1989, Teneisha Mercer went to visit YW. While YW was washing her friend's hair, Mr. Cherry stopped by and asked YW if she would wash his hair as well. He told her that his wife usually washed his hair but that she was out of town. YW agreed and arrived at Mr. Cherry's home shortly thereafter.

YW began to wash Mr. Cherry's hair while the two were alone in his kitchen. Mr. Cherry told YW that she was attractive, indicated that his children (Teneisha and her sister) were "hard sleepers [who] wouldn't hear us," and suggested that YW "could come up to his room and we could do something." Tr. at 28. YW initially thought that Mr. Cherry was just joking. She thus agreed when he asked her to baby-sit that evening. Mr. Cherry told YW that he already had talked to her uncle

about the baby-sitting plans, but suggested that she go tell him anyway. She went home, picked up some nightclothes, and then returned to Mr. Cherry's home.

At approximately 3:00 a.m. on the morning of July 10, 1989, YW awoke in the bedroom that she was sharing with Mr. Cherry's two daughters. She observed Mr. Cherry gesturing to her in a way that she interpreted as a signal to come to his room. She became frightened and decided to leave. On her way out of the house, she again encountered Mr. Cherry. He grabbed YW, placed her on his knee, and began fondling her. According to YW, she "just sat there and started crying and said, 'I don't want to do this. I want to go home.'" *Id.* at 36. Mr. Cherry soon picked YW up and placed her on the floor, told her that he was wearing a condom, pulled down her underwear, unzipped his own pants, and penetrated her. He let her leave the house soon thereafter, but only after saying that she should not tell her uncle what had happened.

### B. *District Court Proceedings*

Because the events described above occurred on property under exclusive federal jurisdiction, Mr. Cherry was indicted under federal law. Count One of the three-count indictment charged him with violating 18 U.S.C. § 2241(a) by using force to "knowingly cause and attempt to cause [YW] to engage in a sexual act as defined in 18 U.S.C. § 2245(2)(A), namely contact between the penis and the vulva."[1] R.11 at 1. Count Two charged him with violating 18 U.S.C. § 2242(1) by knowingly placing YW in fear in order to cause her to engage in a sexual act.[2] Finally, Mr. Cherry was

---

**1.** Section 2241 (aggravated sexual abuse) provides in pertinent part that

> [w]hoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, knowingly causes another person to engage in a sexual act—
>
> (1) by using force against that other person; or
>
> (2) by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnaping;

or attempts to do so, shall be fined under this title, imprisoned for any term of years or life, or both.

18 U.S.C. § 2241(a).

A "sexual act" is defined in pertinent part as "contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight." *Id.* § 2245(2)(A).

**2.** Section 2242 (sexual abuse) reads in pertinent part:

charged in Count Three with violating 18 U.S.C. § 2243(a) by knowingly engaging in a sexual act with YW.[3] Mr. Cherry pled not guilty on all three counts and waived his right to a jury trial.

At trial, YW was the government's first witness. After describing the events of the night of July 9–10, 1989, she testified that she first reported the incident early in the afternoon of the 10th to a friend, Sean Levine. YW testified that she told Levine "how I was forced to have sex." Tr. at 47. YW was cross-examined extensively. For example, counsel for Mr. Cherry tried to get YW to admit that she and Mr. Cherry's daughters, rather than Mr. Cherry, had first proposed that YW baby-sit that night, that she had initiated the discussion about sex, that she had agreed voluntarily to engage in sex, and that Mr. Cherry had treated her gently.

The government's next witness was Levine. Approximately one week prior to trial, the government had filed a motion *in limine* requesting admission of Levine's proposed testimony regarding his conversation with YW on July 10, 1989. In its motion, the government argued that the testimony would be admissible under Federal Rule of Evidence 803(24), the residual hearsay exception. In essence, the government submitted that YW's telling Levine of the incident amounted to a "fresh complaint" of forcible sexual assault and therefore had sufficient indicia of reliability to qualify for admission under this rule. The court agreed to hear Levine's testimony, but reserved a final ruling on the admissibility of the evidence. The court also observed that the testimony might prove to be admissible as a prior consistent statement under Rule 801(d)(1).[4] As Levine began to testify about the conversation, Mr. Cherry's counsel objected: "I believe the evidentiary testimony should be limited only to the fact that there was some type of complaint made and that it should exclude details as well as the name of the defendant." Tr. at 127. The government countered by pointing out that, in light of the cross-examination of YW, it now was offering the testimony as a prior consistent statement. Invited to address the 801(d)(1) issue by the court, Mr. Cherry's counsel replied that he was

> not prepared to argue 801 because it was my understanding from the government's motion that ... they are saying that the government recognizes that the testimony would be limited to [the fact that a complaint had been made]. As such, Judge, I think that should be the extent of it. I think it should be limited. That was my understanding of how we were going to proceed. If I had an objection to anything beyond that, then, I would have prepared for it. As it is now, I am given notice right on the spur of the moment. Counsel is ready to argue and I am not ready to argue on that, Judge.

---

> Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, knowingly—
> > (1) causes another person to engage in a sexual act by threatening or placing that other person in fear (other than by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnaping) ...
> > ...
> or attempts to do so, shall be fined under this title, imprisoned not more than 20 years, or both.
> 18 U.S.C. § 2242(1).

**3.** At the time of Mr. Cherry's offense, section 2243 (sexual abuse of a minor or ward) provided in pertinent part:
> Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, knowingly engages in a sexual act with another person who—

> > (1) has attained the age of 12 years but has not attained the age of 16 years; and
> > (2) is at least four years younger than the person so engaging;
> or attempts to do so, shall be fined under this title, imprisoned not more than five years, or both.
> 18 U.S.C. § 2243(a). The maximum term later was increased to 15 years. *See infra* note 21.

**4.** This rule provides in pertinent part:
> A statement is not hearsay if—
> > (1) **Prior statement by witness.** The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive....
> Fed.R.Evid. 801(d)(1)(B).

*Id.* at 129–30. After observing that Rule 801(d)(1), unlike Rule 803(24), has no notice requirement, the court overruled the objection and admitted the testimony as a prior consistent statement. Levine then recounted his conversation with YW in terms that corroborated her testimony that she had been an unwilling participant in the sexual activity initiated by Mr. Cherry.

The government's next witness was Dr. Alan Beer, who had examined YW on the morning of July 11, 1989, approximately twenty-eight hours after the incident at Mr. Cherry's home. Without relevant objection,[5] Dr. Beer testified that YW "specifically complained that she had been sexually fondled and sexually abused." Tr. at 152. He recounted further details about her account of the incident, including her claim that her vagina had been penetrated. Dr. Beer then was asked whether YW had told him "anything else about the incident that caused her to be at the hospital," and he replied:

> She told me that: (Reading)
> "He held my arms so I couldn't do anything. He laid me on the floor and had intercourse with me. He said not to tell anyone. The kids I was sitting with are his children. He never did this to me before."

*Id.* at 153.

At this point, Mr. Cherry's counsel objected. He contended that "that part of the history ... is not relevant to his diagnosis of the alleged incident." *Id.* He further objected that the testimony was prejudicial to Mr. Cherry. Before ruling on the objection, the court permitted the government to establish further foundation, and Dr. Beer testified that the details he previously had recounted had helped him in diagnosing YW's condition. The court then overruled the objection. Dr. Beer also testified that YW appeared frightened during their discussion prior to her physical examination: "It took some time for me to gain her confidence and have her reveal exactly what had happened

before I did the physical examination." *Id.* at 155. Based on that examination, he testified that sexual penetration of her hymen had occurred within "a recent period preceding my examination." *Id.* at 156. During cross-examination, Dr. Beer indicated that the penetration would have occurred no more than forty-eight hours or fewer than six hours preceding his examination of YW. Finally, on redirect, Dr. Beer clarified that the penetration he had described earlier would have involved contact with the vulva.

Mr. Cherry testified in his own defense. He contended that his stepdaughter Teneisha had asked that YW spend the night on July 9th and denied that he had asked YW to baby-sit. He further testified that he had not suggested to YW that they have intercourse until she suggestively brushed up against him. Although he acknowledged attempting to have intercourse with her, he claimed that his penis merely had touched her thigh and denied that he ever had achieved penetration. He repeated this denial on cross-examination.

The government called YW's uncle as a rebuttal witness. He testified that Mr. Cherry had requested permission to have YW baby-sit that evening. The request came before YW first went to Mr. Cherry's home to wash his hair. Finally, the government called Federal Bureau of Investigation Special Agent Norman Embry as a rebuttal witness. Agent Embry testified that he had interviewed Mr. Cherry on July 11, 1989. According to Agent Embry, Mr. Cherry claimed to have taken a friend to the hospital before returning to his home on the morning of July 10th, but his story did not check out. Agent Embry also testified that Mr. Cherry said that he saw YW going home shortly after he arrived and that he then had gone to bed.

In rendering its judgment, the district court alluded to the testimony of the two rebuttal witnesses to support its conclusion that Mr. Cherry had not testified truthfully. Moreover, it pointed to the testimony

---

**5.** Mr. Cherry's counsel objected to Dr. Beer's use of his notes while testifying, but that issue is not raised in this appeal.

of both YW and Dr. Beer when it found that, despite Mr. Cherry's denials under oath, penetration had occurred. The court observed that YW appeared to be a credible witness:

> The fact that her testimony has been corroborated by the doctor and by Mr. Levine shortly after the event seems to me to make it crystal clear that her version of the events of the early morning of July 10th, 1989 were beyond a reasonable dobut [sic] a truthful recording of those events.

Tr. at 292.

The court then turned to the question of whether the government had established the force element in the aggravated sexual abuse count (Count One) and the fear element in the sexual abuse count (Count Two). Although indicating that it had no doubt that YW was "in fear" at the time of the incident and that "fear was the motivating factor for submitting to the defendant's act," the court concluded that the government had not adequately established that Mr. Cherry had used "force" as contemplated by section 2241(a). *Id.* at 292–93. The court therefore acquitted Mr. Cherry on Count One and convicted him on Counts Two and Three.

Mr. Cherry was sentenced on June 21, 1990. Only one objection to the presentence report is relevant to this appeal. Mr. Cherry objected to the proposed two-level increase for obstruction of justice under section 3C1.1 of the guidelines. After the government pointed out that the court had "found that the defendant had testified untruthfully as to the incident itself and also as to the false alibi he gave," the court overruled the objection. Tr. at 304. The court imposed a sentence of 120 months followed by three years of supervised release.

## II

## ANALYSIS

### A. *Vagueness Challenge*

In this appeal, Mr. Cherry argues that his conviction under 18 U.S.C. § 2242(1) should be reversed because the statute is unconstitutionally void for vagueness on its face and as applied to him.[6] Specifically, he contends that the term "fear" in the statute fails to "provide fair warning of the proscribed conduct." Appellant's Br. at 9. Mr. Cherry posits that the statute leaves unclear whether Congress proscribed sex acts induced by fear of nonphysical harm or trivial bodily injury. Because Mr. Cherry did not raise this issue before the district court, we may reverse only upon a showing of plain error. *See, e.g., United States v. Hagan,* 913 F.2d 1278, 1282 (7th Cir.1990); Fed.R.Crim.P. 52(b).[7] That is, we may reverse only if, absent the alleged error, Mr. Cherry "probably would have been acquitted." *Hagan,* 913 F.2d at 1282. Furthermore, because Mr. Cherry does not contend that section 2242(1) threatens first amendment freedoms, we shall not address his facial challenge; rather, his "vagueness claim must be evaluated as the statute is applied to the facts of this case." *Chapman v. United States,* —— U.S. ——, 111 S.Ct. 1919, 1929, 114 L.Ed.2d 524 (1991) (citing *United States v. Powell,* 423 U.S. 87, 92, 96 S.Ct. 316, 319, 46 L.Ed.2d 228 (1975)); *accord United States v. Jackson,* 935 F.2d 832, 838 (7th Cir.1991).

Unconstitutionally vague statutes pose two primary difficulties: (1) they fail to provide due notice so that "ordinary people can understand what conduct is prohibited," and (2) they "encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983); *accord Jack-*

---

**6.** For the text of the relevant part of the statute, see *supra* note 2. Mr. Cherry also raised an overbreadth challenge to the statute in his initial brief, but abandoned that challenge in his reply brief. *See* Appellant's Reply Br. at 1 n. 1.

**7.** This court has noted that "[e]rrors of constitutional dimension ... are more freely noticed than are less serious, non-constitutional errors." *United States v. Shue,* 766 F.2d 1122, 1132 (7th Cir.1985). However, even in the case of alleged constitutional error, we may reverse in the absence of an objection in the district court only "if we find reversal necessary to avoid a miscarriage of justice." *Id.*

*son, supra,* 935 F.2d at 838. One important aspect in evaluating the first factor is whether a challenged statute contains a *scienter* requirement. When the government must prove intent and knowledge, "[t]hese requirements ... 'do[ ] much to destroy any force in the argument that application of the [statute] would be so unfair that it must be held invalid[.]' " *Id.* at 839 (quoting *Boyce Motor Lines v. United States,* 342 U.S. 337, 342, 72 S.Ct. 329, 332, 96 L.Ed. 367 (1952)).[8] Because section 2242(1) requires proof that the defendant "knowingly" induce the prohibited conduct "by threatening or placing that other person in fear," Mr. Cherry bears an especially heavy burden in raising his vagueness challenge.

Section 2242(1) was enacted as part of the Sexual Abuse Act of 1986, Pub.L. No. 99–654, § 2, 100 Stat. 3660, 3661. Prior to passage of the Sexual Abuse Act, federal law prohibited "rape" on property "within the special maritime and territorial jurisdiction of the United States." 18 U.S.C. § 2031 (repealed 1986). Although "rape" was not defined in that or other federal statutes, federal courts sustained section 2031 against void for vagueness challenges. *See United States v. Bear Ribs,* 562 F.2d 563, 565 (8th Cir.), *cert. denied,* 434 U.S. 974, 98 S.Ct. 531, 54 L.Ed.2d 465 (1977).[9] Nonetheless, Congress recognized that neither the statute then in effect nor the cases interpreting it made it "possible to delineate with certainty the outer limits of the conduct proscribed by this statute." H.R.Rep. No. 594, 99th Cong., 2d Sess. 7 (1986), reprinted in 1986 U.S.Code Cong. & Admin.News 6186, 6187 [hereinafter House Report]. In enacting the Sexual Abuse Act, Congress sought to

> modernize[ ] and reform[ ] Federal rape provisions by: (1) defining the offenses

in gender neutral terms; (2) defining the offenses so that the focus of a trial is upon the conduct of the defendant, instead of upon the conduct or state of mind of the victim; (3) expanding the offenses to reach all forms of sexual abuse of another; (4) abandoning the doctrines of resistance and spousal immunity; (5) and expanding Federal jurisdiction to include all Federal prisons.

*Id.* at 10–11, 1986 U.S.Code Cong. & Admin.News at 6190–91.

The Sexual Abuse Act defines separate offenses for sexual abuse, *see* 18 U.S.C. § 2242, and aggravated sexual abuse, *see id.* § 2241. As Mr. Cherry concedes, reading these two statutes in combination provides at least minimal content to the definition of "fear" in section 2242: the fear contemplated by section 2242(1) expressly excludes "fear that any person will be subjected to death, serious bodily injury, or kidnaping." These latter bases of fear would trigger applicability of section 2241(a)(2). The legislative history of section 2242 makes clear that Congress intended to proscribe

> caus[ing] another person to engage in a sexual act by means of express or implied threats or placing another in fear (other than by threats of, or placing in fear of, harm described in proposed section 2241(a)(2)). The requirement of force may be satisfied by a showing that the threat or intimidation created in the victim's mind an apprehension or fear of harm to self or others.

House Report at 16, 1986 U.S.Code Cong. & Admin.News at 6196. If actual force is used, the defendant is guilty of aggravated sexual abuse under 18 U.S.C. § 2241(a)(1).

Our review of the record convinces us that, as the government argues, Mr. Cherry's conduct was at the core of the conduct

---

**8.** *See also, e.g., United States v. Davenport,* 929 F.2d 1169, 1173 (7th Cir.1991); *United States v. Gardner,* 860 F.2d 1391, 1394 (7th Cir.1988), *cert. denied,* 490 U.S. 1023, 109 S.Ct. 1751, 104 L.Ed.2d 187 (1989); *United States v. Rodgers,* 755 F.2d 533, 544 (7th Cir.), *cert. denied,* 473 U.S. 907, 105 S.Ct. 3532, 87 L.Ed.2d 656 (1985). *But cf. Levas & Levas v. Village of Antioch,* 684 F.2d 446, 453 (7th Cir.1982) (suggesting that *scienter* element of statute must be more than

"simply a circular reiteration of the offense" to affect void for vagueness analysis).

**9.** *Cf. Oliver v. United States,* 230 F. 971, 973 (9th Cir.) (Congress may use "rape" or other terms "known to the law of nations or to the common law" without creating unconstitutional vagueness), *cert. denied,* 241 U.S. 670, 36 S.Ct. 721, 60 L.Ed. 1230 (1916).

proscribed by section 2242.[10] Although the district court acquitted him of aggravated sexual abuse, the court acknowledged that the question of whether Mr. Cherry had used "force" was "a very close question." Tr. at 293. But the court found "no question" that YW had been "placed in fear" by the defendant. *Id.* Admittedly, YW indicated on cross-examination that Mr. Cherry had treated her "gently" "[a]t one point." *Id.* at 85. She also testified, however, that Mr. Cherry had prevented her from leaving his home and that she had not screamed or tried to get away because she was "scared and ... didn't know what he would do to me." *Id.* at 37. When asked what she meant by the latter phrase, YW replied, "He was bitter and violent." *Id.* Even though the district court was not convinced that the amount of physical restraint that Mr. Cherry used required his conviction for aggravated sexual abuse, there is no indication that the district court doubted the credibility of YW on the major aspects of her testimony. That testimony provides an ample foundation for the conclusion that she submitted to Mr. Cherry because his actions implicitly placed her in fear of at least some bodily harm. Thus, as applied in this case, section 2242(1) is not unconstitutionally void for vagueness.

B. *Admission of Victim's Out of Court Statements*

1. Prior consistent statement

■ Mr. Cherry contends that Sean Levine's testimony on his conversation with YW concerning the events at Mr. Cherry's home is inadmissible hearsay. He argues that the district court erred in admitting the testimony as a prior consistent statement under Federal Rule of Evidence 801(d)(1)(B). In order for a prior consistent statement to be admissible as substantive evidence, four conditions must be satisfied:

First, the declarant must testify at trial and must be subject to cross-examination. Second, the prior statement must be consistent with the declarant's trial testimony. Third, the statement must be offered to rebut an express or implied charge of recent fabrication. Finally, the statement must have been made before the declarant had a motive to fabricate.

*United States v. Monzon*, 869 F.2d 338, 342–43 (7th Cir.) (citations omitted), *cert. denied*, 490 U.S. 1075, 109 S.Ct. 2087, 104 L.Ed.2d 650 (1989); *accord United States v. Davis*, 890 F.2d 1373, 1379 (7th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1165, 107 L.Ed.2d 1068 (1990). Mr. Cherry argues, in effect, that the latter two conditions were not satisfied in regards to Levine's testimony. First, according to Mr. Cherry, the applicability of Rule 801(d)(1)(B) had not been triggered because he had not yet charged or implied that YW's account was a recent fabrication: "Defense counsel must be permitted to confront his client's accuser with prior inconsistent statements without opening the door to every hearsay statement which supports the government's case." Appellant's Br. at 14–15. Second, Mr. Cherry contends that, because YW would have been "embarrassed or reluctant to admit to her friends and family that she had [consensual] sexual relations with a much older man," she had reason to fabricate even at the time that she recounted the events to Levine. *Id.* at 15.

■ Because Mr. Cherry's trial counsel was "not prepared to argue 801," Tr. at 129, and thus did not raise a suitable objection, we review this claim on appeal only for plain error. *See United States v. Rodriguez*, 925 F.2d 1049, 1054 & n. 9 (7th Cir.1991); Fed.R.Crim.P. 52(b). This court has refused to hold that "any isolated impeachment on cross-examination gives rise to an implied charge of recent fabrication." *Christmas v. Sanders*, 759 F.2d 1284, 1288 (7th Cir.1985). But, in this case, the extensive cross-examination of YW challenged the core of her testimony that she had been

---

**10.** *Cf. Parker v. Levy*, 417 U.S. 733, 756, 94 S.Ct. 2547, 2561, 41 L.Ed.2d 439 (1974) (appellant whose conduct "was squarely within [statutes'] prohibitions" lacks "standing to challenge the vagueness of these [statutes] as they might be hypothetically applied to the conduct of others").

forced to have sex with Mr. Cherry.[11] At one point, counsel even implied that she "felt rejected" because Mr. Cherry allegedly had not consummated the sexual act. Tr. at 96. Moreover, in his opening statement, defense counsel claimed that the evidence would establish that YW had "encourag[ed] and consent[ed] to having sexual relations with a man that was older than she was." *Id.* at 13. He further pointed out that she had failed to complain to anyone about the alleged rape in the hours immediately after the incident.[12] Based on this record, we cannot say that the district court erred in concluding that there was an *implied* charge of recent fabrication.

■ Mr. Cherry's second argument—that YW already had a motive to fabricate when she talked to Levine—is highly speculative and is not supported by the evidence. Both YW and Levine testified that she called him on the afternoon of July 10, 1989. She asked him to come over to her uncle's home so that she could talk to him in person. It is more consistent with the record that YW decided to unburden herself to her friend about being raped than that she called him over to establish a cover story for a night of consensual sex. Especially in light of the plain error standard of review on this issue, we cannot disturb the decision of the district court to admit Levine's testimony.[13]

### 2. Statement pertinent to medical diagnosis or treatment

■ Mr. Cherry also contends that the admission of those parts of Dr. Beer's testimony in which he repeated YW's out of court statements was erroneous as to those statements that allegedly were not relevant to her treatment or diagnosis. Specifically, he challenges the following testimony: " 'He held my arms so I couldn't do anything. He laid me on the floor and had intercourse with me. He said not to tell anyone.' " Appellant's Br. at 15 (quoting Tr. at 153).[14] The government counters that the disputed testimony properly was admitted under Federal Rule of Evidence 803(4), which establishes a hearsay exception for "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present

---

**11.** *Cf. United States v. Andrade,* 788 F.2d 521, 533 (8th Cir.) (implication of recent fabrication may be inferred from "extensive cross-examination ... constitut[ing] a well-planned attack on the credibility of" declarant), *cert. denied,* 479 U.S. 963, 107 S.Ct. 462, 93 L.Ed.2d 408 (1986).

**12.** *Cf. Redmond v. Baxley,* 475 F.Supp. 1111, 1123 (E.D.Mich.1979) (contention that "rape incident never occurred, as evidenced by the fact that the defendant did not report the rape to the authorities ... constituted an implied accusation that the plaintiff fabricated his story of the rape").

**13.** *See United States v. Whaley,* 830 F.2d 1469, 1476 (7th Cir.1987) ("The reviewing court will examine only those contentions that are based on 'newly raised questions of law, untainted by factual ambiguity.' ") (quoting *United States v. McCabe,* 720 F.2d 951, 955 (7th Cir.1983)), *cert. denied,* 486 U.S. 1009, 108 S.Ct. 1738, 100 L.Ed.2d 202 (1988).

**14.** We note that Mr. Cherry does not expressly challenge the very next sentence in the doctor's testimony (" 'The kids I was sitting with are his children.' "). Because that statement would tend to identify the defendant, its admissibility is questionable. *See United States v. Pollard,* 790 F.2d 1309, 1313 (7th Cir.1986) ("Of course,

statements in medical records frequently relate both to the cause of a medical condition and fault. In such a situation a district court can redact the statement so as to render it admissible, rather than let an inadmissible portion of the statement taint the whole and refuse to admit the entire statement."), *overruled on other grounds, United States v. Sblendorio,* 830 F.2d 1382, 1393 (7th Cir.1987), *cert. denied,* 484 U.S. 1068, 108 S.Ct. 1034, 98 L.Ed.2d 998 (1988); *United States v. Iron Shell,* 633 F.2d 77, 84 (8th Cir.1980) ("It is important to note that the statements concern what happened rather than who assaulted her. The former in most cases is pertinent to diagnosis and treatment while the latter would seldom, if ever, be sufficiently related."), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981); *see also United States v. Iron Thunder,* 714 F.2d 765, 773 (8th Cir.1983) (victim's "statements did not point to the persons responsible for her condition nor did they reveal facts irrelevant to medical diagnosis or treatment"). Nonetheless, as we explain in the text, even if the district court erred in not having the statement redacted, any error was harmless. *Cf. Rascon v. Hardiman,* 803 F.2d 269, 279 (7th Cir.1986) (because any possible error was harmless, declining to decide definitively whether "statements as to the cause of the injury must be distinguished from statements assessing fault for the injury").

symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

We review challenges to the evidentiary rulings of the district courts for abuse of discretion. *See, e.g., Rodriguez,* 925 F.2d at 1053. In *Cook v. Hoppin,* 783 F.2d 684 (7th Cir.1986), this court indicated some of the limitations to admissibility under Rule 803(4):

> By its own terms, Rule 803(4) does not exclude from the hearsay rule statements relating to fault which are not relevant to diagnosis or treatment. The test, when examining whether statements contained in medical records relating to the cause of an injury are admissible hearsay, is whether such statements are of the type reasonably pertinent to a physician in providing treatment. In determining which statements are relevant to diagnosis or treatment, each case must be examined on its own facts, and in making such a judgment much will depend on the treating physician's own analysis.

*Id.* at 690 (citations omitted). In *Cook,* this court found that the district court had erred in admitting challenged testimony in large part because the testifying physician had indicated that "the statements relating to the alleged 'wrestling match' were not of the type medical personnel generally rely on in making a diagnosis and providing treatment. Hoppin presented no evidence to rebut this assertion." *Id.* In Mr. Cherry's case, conversely, the testifying physi-

cian indicated that the challenged hearsay statement was helpful in examining and treating YW. A physician's bald assertion that a statement regarding fault is helpful in this regard does not necessarily satisfy the "reasonably pertinent" element of Rule 803(4).[15] Moreover, at first glance, it may be somewhat difficult to understand how YW's claim that her assailant had said that she should not tell anyone satisfies that element. However, we must remember that the task of the physician treating the victim of such an attack requires attention not only to the physical manifestations of trauma but to the psychological ones as well.[16] Also, Mr. Cherry did not cross-examine Dr. Beer on this issue or otherwise present evidence to challenge that assertion at trial. Furthermore, other courts have approved the admission of somewhat similar testimony in the case of young victims of assault.[17] Therefore, we conclude that the district court did not abuse its discretion in admitting the challenged testimony.[18]

Even if we believed that the district court had erred, any error would be harmless. In cases involving claims of non-constitutional error, we may not reverse a conviction if we determine that the error "had no substantial influence on the verdict." *United States v. Johnson,* 927 F.2d 999, 1003 (7th Cir.1991); *see* Fed.R.Crim.P. 52(a). Prior to the challenged testimony, Dr. Beer had testified that YW "specifically complained that she had been sexually fondled and sexually abused." Tr. at 152. He also recounted her claim that her vagi-

---

**15.** *Cf. Gong v. Hirsch,* 913 F.2d 1269, 1274 (7th Cir.1990) (Rule 803(4) requires consideration of what "a reasonable physician would consider relevant in the treatment or even diagnosis of a medical condition").

**16.** As we noted *supra* p. 752, Dr. Beer testified that YW appeared frightened and explained the incident only after he gained her confidence.

**17.** *See United States v. Iron Shell,* 633 F.2d 77, 81–85 (8th Cir.1980) (physician presented detailed testimony about statements of nine year-old victim describing attempted rape), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981); *United States v. Nick,* 604 F.2d 1199, 1201–02 (9th Cir.1979) (per curiam) (physician testified about three year-old boy's description

of sexual assault); *see also United States v. Iron Thunder,* 714 F.2d 765, 772 (8th Cir.1983) (physician testified "to the effect that [victim] had been raped").

**18.** One member of this court has urged adoption of a rule requiring that the prosecution demonstrate unavailability of the declarant when offering statements under the medical diagnosis exception. *See Nelson v. Farrey,* 874 F.2d 1222, 1232 (7th Cir.1989) (Flaum, J., concurring), *cert. denied,* —— U.S. ——, 110 S.Ct. 835, 107 L.Ed.2d 831 (1990). However, because YW did testify and was subject to extensive cross-examination about her own account of the incident, the confrontation clause concerns that motivated Judge Flaum's concurrence are not presented in this case.

na had been penetrated and corroborated that claim based on his physical examination. Because Mr. Cherry's defense rested on his assertions that YW had consented and that penetration had not occurred, we conclude that the district court would have convicted Mr. Cherry even without the challenged statements.

### C. *Sentencing*

■ Mr. Cherry raises only one challenge to his sentence in this appeal. He contends that the district court erred in enhancing his offense level by two levels for obstruction of justice under U.S.S.G. § 3C1.1. At the time of his sentencing, that section provided: "If the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase the offense level by 2 levels." Although the enhancement is not triggered by mere "denial of guilt," U.S.S.G. § 3C1.1 *Application Note* 3, it is triggered if the defendant "testif[ies] untruthfully ... concerning a material fact." *Id. Application Note* 1(c).[19] In his brief, Mr. Cherry contends that the only portion of his testimony that is

> not consistent with a material finding of fact by the court is his refusal to admit any penetration. However, this inconsistency does not in any way reflect a deliberate attempt to obstruct. The evidence indicated that the sexual act was not completed, and that the act of penetration was extremely brief in duration. It is certainly possible that Cherry was unaware that he had achieved penetration.

Appellant's Br. at 19 (citation omitted).

This court may reverse section 3C1.1 enhancements only if the district court's factual findings are clearly erroneous. *See United States v. Lozoya–Morales*, 931 F.2d 1216, 1218 (7th Cir.1991). Because of the definition of "sexual act" in 18 U.S.C. § 2245(2)(A), *see supra* note 1, Mr. Cherry could be expected to know by the time he testified that the court's determination of his guilt or innocence depended significantly on whether the court found that penetration had occurred. In that testimony, he did not express uncertainty about whether there had been penetration. Rather, he repeatedly denied such penetration, claiming that his penis had never come closer than YW's thigh. The district court determined that Mr. Cherry had testified falsely on this material issue, not merely that he had been mistaken.[20] Because this conclusion involved a credibility determination as well as an assessment of the facts, we are especially disinclined to conclude on the basis of a cold record that the court committed clear error. *See United States v. Rodriguez*, 929 F.2d 1224, 1229 (7th Cir. 1991) ("it was not clear error for the district court to conclude that Evelio's misstatements were outright lies intended to mislead the jury, rather than lapses in memory, and thus were an attempt to obstruct justice"); *United States v. Wheelwright*, 918 F.2d 226, 228 (1st Cir.1990) ("matters of credibility are normally for the trial court, not this court, to decide"). The enhancement in Mr. Cherry's case is not the result of clear error.

[9] Finally, we note a possible ambiguity in Mr. Cherry's judgment order (R.30). Based on our review of the sentencing proceedings, it is our understanding that the district court appropriately grouped Mr. Cherry's offenses and

---

19. The application notes to section 3C1.1 were amended following Mr. Cherry's sentencing. *Application Note* 1 now reads in pertinent part: "A defendant's denial of guilt (other than a denial of guilt under oath that constitutes perjury) ... is not a basis for application of this provision." This amendment was intended to "clarif[y] the operation" of section 3C1.1. U.S. S.G. App. C at C.193 (amendment 347).

20. Although the district court did not specify at the sentencing proceedings which aspects of Mr. Cherry's trial testimony it found to be untruthful, it clearly had indicated at the close of the trial that the denial of penetration was critical. See Tr. at 291 ("because of the fact that the defendant was so crystal clear in his contentions that no invasion of the vulva was accomplished and the evidence is so clear that it did happen, it appears that the defendant in this particular instance has not told the truth").

based his sentence only on the more serious count. *See* Tr. at 303 (citing U.S.S.G. § 2A3.1). The court concluded the sentencing hearing by "imposing a sentence of one hundred-twenty months." *Id.* at 312. The judgment order commits Mr. Cherry to a "term of 120 months on counts 2 and 3 of the indictment. Said sentence to run concurrently *with each other*." R.30 at 2 (emphasis supplied). Despite the grammatical ambiguity suggested by the phrase we have emphasized, we believe that the judgment order read in its entirety accurately reflects a *single* sentence of 120 months. We therefore amend the judgment order to reflect a single sentence on the grouped counts.[21]

## Conclusion

For the foregoing reasons, the judgment of the district court is affirmed as amended.

AFFIRMED AS AMENDED.

---

**21.** Mr. Cherry could not properly have received a separate 120–month sentence for Count Three under 18 U.S.C. § 2243(a). Mr. Cherry's violation occurred in 1989, at which time the mandatory sentence under section 2243(a) was only five years. *See* 18 U.S.C. § 2243(a). The maximum sentence was not raised to 15 years until November 29, 1990, more than one year after Mr. Cherry's offense and months after his trial and sentencing. *See* Crime Control Act of 1990, Pub.L.No. 101–647, Title III, § 322, 104 Stat. 4789, 4818 (codified at 18 U.S.C.A. § 2243(a) (West Supp.1991)).