**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Michael WALTON, Defendant–Appellant.**

**No. 93–2950.**

United States Court of Appeals,
Seventh Circuit.

Argued June 7, 1994.

Decided Sept. 21, 1994.

**33**

David Capp, U.S. Atty., Andrew B. Baker, Jr., Asst. U.S. Atty., Dyer, IN, Douglas Letter, Matthew M. Collette (argued), Dept. of Justice, Civ. Div., Appellate Section, Washington, DC, Denis E. Buckley, Office of U.S. Atty., South Bend, IN, Vivian Madison, U.S. Food & Drug Admin., Rockville, MD, for plaintiff-appellant.

Suzanne Philbrick, Chesterton, IN (argued), for defendant-appellant.

Before ENGEL,* BAUER and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Michael Walton was a vendor of heart pacemakers, which are surgically installed inside the chests of patients. Walton tampered with the invoices and packing slips that accompanied the pacemakers in their shipping containers. Seeing an opportunity to make a profit on outdated pacemakers, he changed the "use-before" dates on these documents, which indicated the last date on which a pacemaker was to be used. Walton then returned them to the package with the pacemakers, resealed the packages, and sold the pacemakers to hospitals for implant.

Walton was indicted. The indictment alleged that he led a conspiracy to commit various illegal acts, including tampering with pacemakers by "relabelling devices with false make, model, and serial numbers and dates, selling expired devices for implant, and implanting used devices." He was also charged with altering the expiration date of an identified pacemaker that was implanted in a specific individual. The allegations stated that Walton had manifested "extreme indifference" to the risk of placing another person in danger of death by tampering with the "use-before" date on the pacemaker.

Walton, along with other defendants, went to trial, but on the seventeenth day he decided to plead guilty. A petition to enter a change of plea was filed with the court, and it was signed by Walton, his attorney and the Assistant United States Attorney. The petition stated that Walton sought to change his plea to guilty with regard to Count 4 (product tampering in violation of 18 U.S.C. § 1365(a)); Count 9 (mail fraud in violation of 18 U.S.C. § 1341); and Count 13 (possession of a document-making implement in violation of 18 U.S.C. § 1028(a)(5)). The petition contained a statement by Walton that he was "in fact guilty of those offenses."

In the petition Walton admitted that he "did tamper with the labelling of and the container for a consumer product that affects interstate and foreign commerce" by changing the use-before date on a pacemaker and selling the device for implant in a patient. He also admitted that he illegally possessed an embossing tool which allowed him to forge the seal of the State of Indiana and that he employed the mails illegally to send a fraudulent bill.

In the petition Walton also stated that he understood the maximum penalties he faced and that he would be sentenced under the United States Sentencing Guidelines. He agreed to restrictions on his involvement in any business related to medical devices and that the "occupation restrictions shall be a condition of [Walton's] probation or *supervised release*." (emphasis added).

At the change of plea hearing, Walton was sworn and engaged in a colloquy with the district judge regarding his guilty plea.

---

* The Honorable Albert J. Engel, Circuit Judge, United States Court of Appeals for the Sixth Circuit, is sitting by designation.

Walton told the court that he had read the petition and discussed it with his attorney. The court told Walton the rights he was waiving by his guilty plea, and Walton indicated that he understood them and agreed to waive them. The court asked Walton if the facts he admitted were true, and Walton said they were.

The district judge asked Walton if he understood the penalties which would be imposed on him following his guilty plea. The court specifically referred to the provision in the plea petition which forbade Walton to engage in any business involving medical devices. The court described this passage as "fairly significant" and noted that this prohibition was "a condition of probation or supervised release." The court added that the sentence to be imposed called for probation or supervised release in addition to the time in custody. The court then defined supervised release for Walton as "a form of probation, which you are not in custody but you have to meet certain requirements, such as reporting and so forth."

The district court concluded the inquiry by determining that Walton had discussed the decision to plead guilty with his counsel, that he was satisfied with his counsel's work, and that he fully understood the consequences of his guilty plea. The court also asked Walton's counsel whether he and Walton had conferred regarding the plea, and whether he could "certify" that Walton understood his plea and the consequences of the plea. Walton's counsel answered "yes" to both questions.

Walton was sentenced to 72 months imprisonment followed by two years of supervised release. After pronouncing the sentence, the court offered Walton and his counsel the opportunity to speak. The remarks on behalf of Walton dealt only with a request that the sentence be served in a specific place and that Walton's appointed counsel remain his representative in case he wished to file further motions. There was no objection or reference to the imposition of a period of supervised release.

Walton now appeals his conviction, arguing that the Anti–Tampering Act (1) is unconstitutionally vague, and (2) infringes free speech in violation of the First Amendment. He also argues that his guilty plea should be withdrawn because he was not informed that his sentence would include a term of supervised release.

■ Walton's guilty plea precludes him from raising any question regarding the facts alleged in the indictment. *United States v. Broce*, 488 U.S. 563, 569–70, 109 S.Ct. 757, 762–63, 102 L.Ed.2d 927 (1989). He has admitted all those facts and cannot undo his admission. Further he has waived all nonjurisdictional challenges to the constitutionality of his conviction. *United States v. Brown*, 870 F.2d 1354, 1358 (7th Cir.1989). Walton attempts to meet this restriction by demonstrating that the statute under which he was convicted is unconstitutionally vague. He bears the burden of proving that it is. *United States v. Cherry*, 938 F.2d 748, 754 (7th Cir.1991).

■ Walton did not raise his argument regarding the constitutionality of the Anti–Tampering Act in the district court. We therefore will reverse only if we find plain error. *Cherry*, 938 F.2d at 753. To reverse on the basis of plain error we must conclude that it is necessary to do so to "avoid a miscarriage of justice." *United States v. White*, 903 F.2d 457, 466–67 (7th Cir.1990).

■ We thus turn to an examination of the Anti–Tampering Act. The Act imposes criminal penalties on anyone who "with reckless disregard for the risk that another person will be placed in danger of death or bodily injury and under circumstances manifesting extreme indifference to such risk, tampers with any consumer product that affects interstate or foreign commerce, or the labeling of, or container for, any such product." 18 U.S.C. § 1365(a).

"Consumer product" is defined in § 1365(g)(1)(A) to include any "device" defined in the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 321(h). Device is there defined as any "instrument, apparatus, implement, machine, contrivance, implant, in vitro reagent, or other similar or related article" intended to be used in the diagnosis or treatment of a disease or other condition.

Similarly, § 1365(g)(2) adopts the definition of "labeling" used in the Food, Drug and Cosmetic Act at § 321(m), to mean "all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying the article."

To determine if the foregoing language is unconstitutionally vague, we look to our discussion in *Brockert v. Skornicka,* 711 F.2d 1376, 1378, 1381 (7th Cir.1983). In that case we noted that a statute may be vague to the point of unconstitutionality in two ways: (1) if "it does not give a person of ordinary intelligence a reasonable opportunity to comply with the law. In effect there is no notice of what the law requires," and (2) if the law "lacks explicit standards for its application" and thereby creates the danger that the law will be imposed on an *ad hoc* basis, with the risk of arbitrary and discriminatory enforcement.

In *Brockert* we also observed that there is a continuum of tolerance for vagueness. Vagueness is least tolerable in laws that interfere with free expression or that impose criminal penalties. A higher degree of vagueness is tolerable in laws pertaining to economic regulation, where the persons subject to the law are more likely to plan their behavior and to seek legal advice before acting. *See Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983); *United States v. Antzoulatos,* 962 F.2d 720, 726 (7th Cir.1992).

In asserting that the language, appearing directly or by incorporation, in the Anti–Tampering Act is unconstitutionally vague, Walton claims that it cannot be understood by a person of ordinary intelligence and leaves room for arbitrary enforcement. He contends that a person of ordinary intelligence could not discern the meaning of the statutory prohibition against "tampering with any consumer product ... or the labeling of ..." that product, where label is defined as any "written, printed or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article." Specifically, Walton argues that one possessed with ordinary intelligence would not know that it was a violation of this law to

alter the use-before date on the packing slips and invoices which accompany heart pacemakers.

Walton is obviously wrong. The statute explicitly and clearly forbids making any changes to a consumer product, such as a medical device, or its labeling, with reckless disregard for the safety of others. There is nothing vague about this. All the elements are clearly defined or commonly used terms. The statute, through straightforward incorporation, defines "device" to include any "implant ... to be used ... in the treatment of a disease," and "label" to include any "written, printed or graphic matter ... accompanying any article." To anyone with ordinary intelligence who reads the statute, it would be plainly apparent that falsifying the expiration date on the invoice and packing slip of a heart pacemaker is forbidden.

The statute is not vague, and, in fact, it is more easily comprehended than many others. Statutes that are considerably less explicit on their faces than this one have survived vagueness challenges. For example, the Code of Military Justice imposes criminal penalties for "conduct unbecoming an officer." This provision is not unconstitutionally vague. *Parker v. Levy,* 417 U.S. 733, 752–61, 94 S.Ct. 2547, 2564–65, 41 L.Ed.2d 439 (1974). The RICO statute outlaws acts that constitute a "pattern of racketeering activity." This provision passed muster as well. *United States v. Ashman,* 979 F.2d 469, 487 (7th Cir.1992), *cert. denied,* — U.S. —, 114 S.Ct. 62, 126 L.Ed.2d 32 (1993).

None of the dangers of vagueness are implicated by the Anti–Tampering Act, and Walton's conduct, to which he pled guilty, falls quite clearly within the statutory prohibitions.

■ Walton also makes a futile argument that the Anti–Tampering Act violates the First Amendment by improperly regulating commercial speech. But Walton's own conduct was not improperly regulated; his "speech" was false and misleading and therefore not protected. *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n,* 447 U.S. 557, 563, 100 S.Ct. 2343, 2350, 65 L.Ed.2d 341 (1980). However, he argues that the statute

**36**

is overbroad because it restricts the speech of others. But the speech implicated by the statute is commercial speech, so his argument collapses because "the overbreadth doctrine does not apply to commercial speech." *Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 497, 102 S.Ct. 1186, 1192, 71 L.Ed.2d 362 (1982); *see also United States v. Kaufmann*, 985 F.2d 884, 895 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2350, 124 L.Ed.2d 259 (1993).

There was no plain error, and certainly no miscarriage of justice, in enforcing the Anti–Tampering Act against Walton. His challenge to the constitutionality of the Act fails.

■ Finally, Walton argues that he should be entitled to withdraw his guilty plea because he was not informed that he would be sentenced to two years of supervised release after serving his term of incarceration. This issue has been waived. In *United States v. Pryor*, 957 F.2d 478, 481–82 (7th Cir.1992), we held that defendant's failure to raise the issue of an alleged breach of a plea agreement at the sentencing hearing before the district court waives the matter for appeal.

The record amply demonstrates that Walton understood his guilty plea and that the plea agreement called for probation or supervised release as a part of his sentence. There was no objection to the sentence at the time it was imposed, and Walton got what he bargained for. The issue is waived. Walton may not withdraw his guilty plea.

The judgment of conviction and sentence of Michael Walton is AFFIRMED.