UNITED STATES of America,
Plaintiff–Appellee,

v.

John W. LINDSEY, Charles T. Howland,
Jr. and Jimmie D. Poe, Sr.,
Defendants–Appellants.

Nos. 96–2086, 96–2243 and 96–3214.

United States Court of Appeals,
Seventh Circuit.

Argued April 11, 1997.

Decided Aug. 22, 1997.

Rehearing Denied Oct. 15, 1997.

Michael Jude Quinley (argued), Deirdre A. Durborow, W. Charles Grace, Office of the United States Attorney, Criminal Division, Fairview Heights, IL, for Plaintiff–Appellee.

Greg Roosevelt (argued), Edwardsville, IL, for Defendant–Appellant John W. Lindsey.

Benjamin B. Allen, Sr., Smith, Allen, Mendenhall, Delaney & Associates, George Edward Moorman (argued), Alton, IL, for Defendant–Appellant Charles T. Howland, Jr.

Burton H. Shostak (argued), Moline & Shostak, Clayton, MO, for Defendant–Appellant Jimmie D. Poe, Sr.

Before CUDAHY, FLAUM and ROVNER, Circuit Judges.

CUDAHY, *Circuit Judge.*

In this criminal appeal, we review the convictions and sentences of three coconspirators, John Lindsey, Charles Howland and Jimmie Poe. Each was convicted of conspiracy to distribute marijuana, as well as a variety of other charges including the use of a firearm during a drug trafficking crime. After consideration of each of the defendants' claims in turn, we reverse in part and affirm in part.

## I.  John W. Lindsey

Lindsey was convicted of conspiracy to distribute marijuana, using a firearm during and in relation to a drug trafficking crime and possession of a firearm by a convicted felon. Lindsey raises a number of issues on appeal. He claims that there was insufficient evidence to convict, to enhance his relevant conduct for sentencing, to find that he attempted to obstruct justice and to determine that he occupied a position of leadership in the conspiracy. Lindsey also believes that he was subjected to an ex post facto application of the sentencing guidelines and that his conviction for use of a firearm during a drug trafficking crime was improperly obtained due to an incorrect jury charge. Except for the use of a firearm conviction, which we reverse, we affirm on all counts.

### A.  Lindsey's Sufficiency Claims

■ The first four of Lindsey's claims are all based primarily on his argument that the witnesses testifying against him were incredible and biased. Indeed, many of the witnesses in Lindsey's trial were co-defendants who pleaded guilty (presumably in exchange for leniency) or drug addicts, and thus subject to heightened scrutiny. *See United States v. Beler,* 20 F.3d 1428, 1435 (7th Cir. 1994). However, the credibility of witnesses, even when there is strong reason to doubt it, remains uniquely within the province of the fact finder and absent clear error we will not reverse on credibility grounds. *See, e.g., United States v. Beverly,* 913 F.2d 337, 358 (7th Cir.1990). Thus we think that there is no basis for setting aside Lindsey's conviction for conspiracy, his sentence enhancement for being a manager or supervisor, the court's calculations of his relevant conduct or

his sentence enhancement for obstruction of justice.

■ Lindsey argues that the government presented insufficient evidence to support his conviction for conspiracy to distribute marijuana. His argument rests on three contentions: that the credibility of the witnesses against him is scant, that his connection to the conspiracy is purely speculative and that a search of his home turned up no indicia of drug dealing. Lindsey believes that both Timothy Mullin and Monroe Morris gave unreliable testimony. But Lindsey fails to specify any reasons apparent on the record for rejecting this evidence, relying instead on his characterization of the witnesses as unreliable due to their status as drug addicts and co-defendants-turned-state's-witnesses. He does not point to any troublesome inconsistencies, identify bias or otherwise indicate why the testimony of these two witnesses should be disregarded. Lindsey's appeal is only a request to reweigh the evidence. This we cannot do.

■ Lindsey's argument against the sentence enhancement he received for being a manager or supervisor must fail for the same reasons. Lindsey contends that the government did not show that he exercised control or supervision over other conspirators. The district court found that the evidence showed Lindsey had employed between 10 and 20 people to break down large quantities of marijuana into smaller units for sale. The district court then concluded that Lindsey was the "manager or supervisor of, for want of a better term, a branch of the conspiracy which involved 5 or more participants and was otherwise extensive." The court's conclusion is not clearly erroneous.

■ Nor do we find the court's calculations of Lindsey's relevant conduct to be clearly erroneous. A convicted conspirator "is responsible for the amount of [drugs] he actually distributed and the amount involved in transactions reasonably foreseeable to him." *United States v. Goines,* 988 F.2d 750, 775 (7th Cir.1993). Lindsey argues that the district court erroneously attributed amounts of marijuana to him without specifically linking him to the drug. This argument misses

the point: the district court found that "Lindsey[ ] was an integral part of the [Poe] conspiracy" so that "he was at a much higher level and enjoyed a closer relationship with Mr. Poe than most of the others, if not all of the other co-conspirators." Thus, reasonable estimates of marijuana foreseeably distributed by other members of the conspiracy are attributable as relevant conduct to Lindsey.

■ Lindsey also challenges the sentence enhancement for obstruction of justice on the grounds that the witnesses who testified against him were unreliable and incredible. Under U.S.S.G. § 3C1.1 a defendant who "willfully obstructed or impeded ... the administration of justice during the investigation, prosecution, or sentencing of the instant offense" receives a two offense level increase. The government presented a good deal of evidence of Lindsey's efforts to obstruct the proceedings against him. This evidence included Lindsey's distribution of a "wanted" poster containing a picture of Monroe Morris and describing him as a "snitch" and Lindsey's offer of money to anyone who would beat up Morris. Lindsey also tried to convince Timothy Mullin not to testify.

Lindsey attempts to discredit this evidence by attacking the reliability of Morris as a witness, by noting that the "wanted" poster was never admitted into evidence and by arguing that the government did not prove that any of these obstructionist activities took place during the "investigation, prosecution, or sentencing of the instant offense." U.S.S.G. § 3C1.1. But the testimony concerned behavior during and after the investigation, but before the prosecution. This is precisely the timing contemplated by § 3C1.1. Further, it is not our, but the district court's, prerogative to determine whether to credit a witness. Here the district court found the cumulative weight of the evidence persuasive.

The question of the "wanted" poster is vexing, however, since no such item was admitted into evidence. Only Morris testified to its existence,[1] and he is hardly a disinterested party. But, even if the poster did not exist, the enhancement is supported by other evidence. There were two witnesses other than Morris who testified to Lindsey's efforts to obstruct justice. Even without the poster, there was sufficient proof to support the obstruction of justice enhancement.

## B. Ex Post Facto

■ Lindsey also argues that he was subjected to an ex post facto application of the sentencing guidelines because of the delay between his conviction and his sentence. Lindsey was convicted on August 25, 1995; and his presentencing report was first filed on October 16, 1995. Our opinion in *United States v. Hernandez*, 79 F.3d 584 (7th Cir. 1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 2407, 138 L.Ed.2d 173 (1997) & —— U.S. ——, 117 S.Ct. 2407, 138 L.Ed.2d 174 (1997), was issued on March 18, 1996, before Lindsey was sentenced. This case held that note 2 of the commentary to U.S.S.G. § 4B1.1 (Career Offender) conflicted with 28 U.S.C. § 994(h) and thus had no application. This so-called *Hernandez* rule was applied to Lindsey and a revised presentence report was issued. If Lindsey had been sentenced before *Hernandez*, note 2 of the commentary would have been applied to him and his maximum sentence would have been calculated without a career offender enhancement and thus would have been significantly shorter.

With respect to an adult defendant convicted of a violent crime or felony drug offense and who has at least two prior such convictions, 28 U.S.C. § 994(h) directs that the Guidelines specify a sentence of imprisonment "at or near the maximum term authorized," presumably including sentence enhancements for prior convictions. Note 2, on the other hand, defines "offense statutory maximum" as "the maximum term of imprisonment authorized for the offense ... *not including* any increase ... that applies because of the defendant's prior criminal record." U.S.S.G. § 4B1.1, commentary n. 2 (emphasis supplied). In Hernandez, we resolved the apparent conflict between the statute and the commentary by enforcing the

---

1. Another witness did testify that Lindsey gave him a picture of someone who had snitched and offered him $500 to beat up Morris.

statutory language. Thus, "maximum term authorized" means the maximum term calculated *after* considering the statutory sentencing enhancements for prior convictions. *Hernandez,* 79 F.3d at 585. Despite the fact that Lindsey's maximum sentence would have been lower before *Hernandez* than after, the application of *Hernandez* to Lindsey's sentence is not ex post facto because *Hernandez* did not create a *new* rule of law.[2] To violate the ex post facto clause, a penal law "must be retrospective.... [I]t must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981). Unlike the usual ex post facto situation, *Hernandez* did not consider the retroactive application of a new penal law. Rather, *Hernandez* clarified the *existing* rule of law by determining that the Sentencing Commission had written an invalid commentary. Thus there is no ex post facto concern in this case.

### C. Use of a Firearm

The government concedes that an improper jury instruction was given with respect to the firearm count. *See* B*ailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995) (defining "use" in 18 U.S.C. § 924(c) narrowly). The government further concedes that the conviction on this count must be reversed and remanded for a new trial. *See United States v. Robinson,* 96 F.3d 246 (7th Cir.1996). Lindsey's conviction under 18 U.S.C. § 924(c) must therefore be reversed.

### II. Charles T. Howland, Jr.

Howland pled guilty to conspiracy to distribute marijuana, to attempt to possess with intent to distribute marijuana, to possession with intent to distribute marijuana and to using and carrying a firearm during and in relation to a drug trafficking crime. Before he was sentenced, Howland made a motion to withdraw his guilty plea on the firearm count, in response to *Bailey,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472. Howland now appeals the district court's denial of that motion as well as the district court's calcula-

tion of his relevant conduct for sentencing and his status as a career offender.

### A. Guilty Plea

■ Howland pled guilty on July 20, 1995. On December 6, 1995 the Supreme Court issued *Bailey,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472, which defined the term "use" in 18 U.S.C. § 924(c) narrowly. On December 13, Howland requested leave to withdraw his guilty plea on the firearm count. The district court denied his motion, finding that he admitted facts which support an 18 U.S.C. § 924(c) conviction even after *Bailey.* In our review of a denial of a motion to withdraw a guilty plea, we rely on Federal Rule of Criminal Procedure 32(d), which provides that a court may permit withdrawal of a guilty plea before sentencing "upon a showing by the defendant of any fair and just reason." Fed.R.Crim.P. 32(d). "The decision of whether to permit a plea withdrawal rests within the [court's] ... discretion ... and we will reverse ... only upon a showing of an abuse of that discretion." *United States v. Messino,* 55 F.3d 1241, 1247 (7th Cir.1995). By pleading, Howland waived any challenge to the facts to which he pled. *See United States v. Walton,* 36 F.3d 32, 34 (7th Cir.1994). What Howland now argues is that after *Bailey* the facts to which he pled no longer support a conviction under 18 U.S.C. § 924(c). The district court disagreed. Since our review of the plea hearing does not indicate an abuse of discretion, we affirm.

Under *Bailey,* the term "use" in 18 U.S.C. § 924(c) requires "active employment" of a firearm. Active employment includes, among other things, displaying a gun, brandishing a gun, bartering a gun for drugs, firing a gun or striking someone with it or referring to a gun during a drug transaction. Possession alone cannot satisfy the "use" requirement under 18 U.S.C. § 924(c). Thus, if Howland admitted to facts which constitute "use" *after Bailey,* there was no abuse of discretion in denying his motion to withdraw his plea even though the legal requirements had changed. The district court found that at the plea hearing the government had proffered, as the factual basis of the plea, evi-

---

**2.** We note the unusual application of ex post facto analysis to a court decision.

dence constituting an 18 U.S.C. § 924(c) violation under *Bailey*. The court reviewed the factual basis of the plea indicating that:

> the evidence would show that during the course of Mr. Poe's transactions in marijuana he was usually armed with a Derringer, over and under Derringer, a loaded Derringer, and that on one occasion with some [other] individuals who had brought marijuana to a location ... where the marijuana was broken up and stored and paid for, that as Mr. Poe and the [others] sat around and ... that ... Hector Solares, Junior, complained that he was the only one who didn't have a gun. Mr. Poe tossed him his Derringer and [Solares] proceeded to fire the Derringer.

Transcript, April 29, 1996, at 14–15. Thus, despite the interim change in the law, the factual basis for the plea supports the conviction. While Howland himself may not have used a weapon, other members of the conspiracy did, and that use was foreseeable to Howland. It was not error for the district court to refuse to allow Howland to withdraw his guilty plea.

### B. Career Offender Status

While determining the appropriate sentence for Howland, the district court found him to be a career offender under the Guidelines because he had been at least twice previously convicted of felonies. Howland was convicted of three related burglaries at the age of seventeen. Howland believes that under U.S.S.G. § 4A1.2, commentary n. 7, only the third conviction can count toward career offender status. The district court found that both the second and the third convictions count. In this connection, note 7 reads:

> *Offenses Committed Prior to Age Eighteen* ....[F]or offenses committed prior to age eighteen, only those that resulted in adult sentences of imprisonment exceeding one year and one month, or resulted in imposition of an adult or juvenile sentence or release from confinement on that sentence within five years of the defendant's commencement of the instant offense are counted.

Howland believes that *possible* "good time" reductions in his sentences should be used to calculate his earliest possible release date. His first conviction carried a sentence of three years which *could* have been served in as few as 15 months. His second conviction, with a sentence of five years, *could* have been served in 27 months. These early, "theoretical" release dates would have been more than five years before the present activity. Howland reads the commentary to say that such offenses do not count towards career offender status. (He does not dispute the applicability of his third conviction.)

Whatever the merits of Howland's argument, his "theoretical" release dates were just that, since he served the full terms of his sentences. Finally, Howland fails to recognize the importance of the "or" in note seven. All of Howland's juvenile convictions "resulted in adult sentences of imprisonment exceeding one year and one month." U.S.S.G. § 4A1.2, commentary n. 7. Thus, all of Howland's convictions should be counted. Because the convictions count, Howland must look to the language of the guideline itself, which states that any sentence of imprisonment exceeding one year and one month imposed within *fifteen years* of the defendant's commencement of the instant offense is counted. U.S.S.G. § 4A1.2. On the other hand, the *five year* term in note seven refers only to juvenile sentences of less than one year and one month which were imposed or which were completely served within five years of commencement of the subsequent crime. Therefore the district court correctly applied career offender status to Howland.

### C. Relevant Conduct

Finally, Howland argues that the relevant conduct attributed to him by the district court is erroneous because he was not allowed to cross-examine any of the witnesses against him. Howland pled guilty without a plea agreement. After his coconspirators were tried and convicted, Howland was sentenced using the amounts of marijuana the government proved at trial. While Howland would like to limit his relevant conduct to those amounts he admitted to, he did not strike such a bargain with the prosecution and, as we have repeatedly declared, a conspirator is responsible for the amount of drugs with which co-conspirators have traf-

ficked, provided this quantity is reasonably foreseeable to him. The marijuana his co-conspirators dealt in was reasonably foreseeable to Howland. The district court made a conservative estimate of those amounts and attributed them to Howland. This was not clearly erroneous.

## III.  Jimmie Darrell Poe, Sr.

Jimmie Poe is characterized by the government as the ringleader of this conspiracy. He was convicted by a jury of conspiracy to distribute marijuana, attempting to distribute marijuana, six counts of distribution and possession with intent to distribute marijuana, using a firearm during and in relation to a drug trafficking crime, possession of a firearm by a felon and engaging in a continuing criminal enterprise. He appeals only his convictions for using a firearm during and in relation to a drug trafficking crime and for engaging in a continuing criminal enterprise.

### A.  Use of a Firearm

As with Lindsey, the government concedes that an improper jury instruction was given with respect to the firearm count. See Bailey, — U.S. —, 116 S.Ct. 501, 133 L.Ed.2d 472. The government further concedes that the conviction on this count must be reversed and remanded for a new trial. See Robinson, 96 F.3d 246. Poe's conviction under 18 U.S.C. § 924(c) must therefore be reversed.

### B.  Continuing Criminal Enterprise

██ Poe believes that his continuing criminal enterprise conviction cannot stand. He believes that the government's argument to the jury sought conviction on legally impermissible grounds. Because we cannot determine if the jury convicted him on legally permissible or legally impermissible grounds, he argues, his conviction must be set aside. See, e.g., United States v. Windom, 82 F.3d 742, 749 (7th Cir.), reh'd, 103 F.3d 523 (7th Cir.1996), cert. denied, — U.S. —, 117 S.Ct. 1716, 137 L.Ed.2d 839 (1997). To convict a defendant for engaging in a continuing criminal enterprise (CCE), 21 U.S.C. § 848, the government must prove:

(1) [a felony violation of the federal narcotics laws]

(2) ... [as] a part of a continuing series of violations ...

(A) ... in concert with five or more other persons with respect to whom [the defendant] occupies a position of organizer, a supervisory position, or any other position of management, and

(B) from which [he] obtains substantial income or resources.

21 U.S.C. § 848(c). Section 848 requires the government to prove that the defendant "occupies a position of organizer, a supervisory position, or any other position of management" with respect to five other persons engaged in the illegal drug trade. Id.; see also United States v. Witek, 61 F.3d 819, 822 (11th Cir.1995), cert. denied, 116 S.Ct. 738 (1996). Poe's argument is that some of the people whom the government argued were organized by Poe, were not, as a matter of law, so organized (some of them, apparently, were "couriers;" these or others may have been "sellers"). Therefore, says Poe, part of the government's argument had no basis in the evidence and was legally impermissible. Despite the fact that the remainder of the government's argument was legally permissible, and thus valid for the jury to rely on for a CCE conviction, Poe argues that we cannot tell whether the jury relied on both the permissible and impermissible arguments or relied on one or the other. This uncertainty would mean that Poe's CCE conviction is invalid, regardless of the otherwise sufficient evidence, and must be reversed.

Poe references two portions of the government's closing argument as impermissible because they posited that a CCE conviction could be based on a finding that Poe organized individuals with whom he had only a "buyer-seller" relationship. The first contested part of the argument involves the government's listing of Bill McCarty (admittedly not subject to Poe's "supervision" or "management" and presumably a "mere" buyer) as one of the people organized by Poe ("frankly I think with Bill McCarty, we have called that an organizer's role more than direct supervision or management role," Trial Tr. Vol. XX, at 35–37). The other is the government's argument that Poe organized various other individuals not subject to his "management:"

[Poe] occupied a position of organizer, supervisor or other position of management with respect to those five other persons. The people who were involved in bringing marijuana to the area, I would argue, and under the law Mr. Poe was involved in organizing their activities so that they could bring the marijuana to him or someone he designated, and that then it could be distributed out to the other people who worked in cooperation with him. So I would argue that for the people he had to call or who had to call him to make the arrangements. Remember, the instruction says that a middleman can be an organizer, supervisor, manager as these terms are defined that he acts as an organizer with regard to these.

*Id.* at 34–35.

Poe points us to *United States v. Barona,* 56 F.3d 1087 (9th Cir.1995), *cert. denied,* — U.S. ——, 116 S.Ct. 813, 133 L.Ed.2d 759 (1996) & —— U.S. ——, 116 S.Ct. 814, 133 L.Ed.2d 759 (1996) & —— U.S. ——, 116 S.Ct. 814, 133 L.Ed.2d 759 (1996), as an analogous case. In *Barona* the government conceded that it had included at least one person who could not legally qualify as a supervisee for CCE purposes in its argument to the jury. Id. at 1096. Because no instructions had been given directing the jury to exclude from CCE consideration individuals who had only buyer-seller relationships with the defendant, the conviction could have been based on legally impermissible grounds. *Id.* at 1098. The conviction therefore had to be reversed. Id.

Here, the government responds by arguing that the jury was properly instructed. The instruction read in part:

The fourth requirement is that you find beyond a reasonable doubt that the defendant occupied a position of organizer, supervisor, or other position of management with respect to five or more persons. An organizer can be defined as a person who puts together a number of people engaged in separate activities and arranges them in their activities in one operation or enterprise. The word organizer does not mean that the organizer must be able to control those whom he organizes.

Because Poe did not object to this instruction (nor does he do so now) and because the jury

was also instructed to base its verdict on the law given by the court, while disregarding argument by counsel which was unsupported by the evidence, the government argues that there was no error based on the argument. The government also contends that we should not follow the lead of the Ninth, Eleventh and D.C. Circuits in finding that the position of organizer under the CCE statute is limited by the phrase "or any *other* position of management," (emphasis supplied) especially since Poe failed to object at trial to the government's final argument. Finally, the government argues that because there is sufficient evidence that Poe supervised at least five other people his CCE conviction should stand.

The government concedes that its argument assumed that to be an "organizer" under the CCE statute does not require the occupation of a "management" role. The government also apparently does not dispute Poe's characterization of his relationships with various individuals cited in argument as not involving a "management" relationship. We note, however, that the instruction, to which Poe did not object, contains no explicit requirement that an "organizer" must have a "management" role. Thus, we face a threshold question: does the term "organizer" require a "management" dimension under 21 U.S.C. § 848?

But before we attempt to answer that question, we must address the nature of our review. As the government is quick to point out, Poe did not object to the now-questioned argument at trial. Thus, we review only for plain error. In order to constitute plain error, the error must be clear under current law and must affect substantial rights. In order to reverse a conviction for plain error, we must determine, in our discretion, that the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano,* 507 U.S. 725, 732–36, 113 S.Ct. 1770, 1776–78, 123 L.Ed.2d 508 (1993).

Had Poe objected to the argument, and been overruled, we would have a much more difficult problem. *See Yates v. United States,* 354 U.S. 298, 312, 77 S.Ct. 1064, 1073, 1 L.Ed.2d 1356 (1957) ("the proper rule to be applied is that which requires a verdict to be

set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected."). Because a management requirement was not alluded to in the court's instructions (to which there was no objection) and since there is adequate evidence of Poe's supervision of a sufficient number of persons whom he clearly "managed," there is no plain error here.[3]

However, we are in accord with the other circuits that have concluded from the statutory language that an "organizer" must exercise some form of managerial authority and that the mere relationship of seller to buyer is not enough. Thus the CCE statute requires that a defendant "occup[y] a position of organizer, a supervisory position, or *any other* position of management." 21 U.S.C. § 848(c)(2)(A) (emphasis added). "Management," however, as used in this sense, should be distinguished from "supervision"—another basis for a CCE finding. "Supervision," with its probable implication of day-to-day oversight and control, arguably requires a much more intensive and continuous exercise of authority than does "management."

The first court to tackle this issue was the Ninth Circuit in *United States v. Jerome*, 942 F.2d 1328 (9th Cir.1991). The *Jerome* court found the following:

> We read the statutory language "or any other position of management" to indicate that an "organizer" must exercise some sort of managerial responsibility; one does not qualify if one simply sets up a system of supply.

*Id.* at 1331. In *Jerome* the government argued to the jury that Jerome was the "organizer" of his suppliers. Under the facts of the case, however, Jerome was properly considered *not* to have managed his suppliers. The Ninth Circuit described the case thus:

> Every legitimate retail store makes arrangements with its regular suppliers. In one sense it may be said to organize its supply, but does it organize its suppliers? Surely not in the sense of being the manager of its suppliers. To be an organizer within the sense of the statute more is required than simply being a steady customer.

*Id.* This conclusion, that an organizer under the CCE statute must exercise some managerial authority, has remained good law in the Ninth Circuit, *see, e.g.*, *United States v. Delgado*, 4 F.3d 780, 783–84 (9th Cir.1993); *Barona*, 56 F.3d at 1096–97, and has been explicitly adopted by the Eleventh Circuit, *see Witek*, 61 F.3d at 823, and the D.C. Circuit. *See United States v. Williams–Davis*, 90 F.3d 490, 508–9 (D.C.Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 986, 136 L.Ed.2d 867 (1997). At the same time, however, the courts have held that an organizer need not exercise "control." *See Witek*, 61 F.3d at 823.

In *Witek*, the Eleventh Circuit considered the disjunctive language of the CCE statute ("or any other position of management"). The court followed the rules of statutory construction by giving § 848(c)(2)(A) a "common-sense reading," by giving weight to the intent of the statute to punish "substantial operations" and by construing ambiguous terms narrowly under the rule of lenity. *Witek*, 61 F.3d at 822. Noting first that every circuit to consider the matter has determined that a "mere buyer-seller relationship does not satisfy § 848's management requirement," *id.* (collecting cases)[4], the court recog-

---

3. Poe never argued that the evidence was insufficient to convict him. In fact, he would be hard pressed to do so. Poe *supervised* at least five other individuals: Both Lindsey and Howland were described as Poe's "commandoes" who would do anything he asked; Pete Peterson and Bo Rivera robbed houses at Poe's direction in order to pay off drug debts. Harry Martin broke marijuana into smaller units for Poe. Tom Lang was employed by Poe to work in a co-conspirator's car garage. And Lindsey directed a number of individuals. Because Poe organized Lindsey, we can attribute Lindsey's actions to Poe, including his organization of others. *Witek*, 61 F.3d at 823 n. 4. Important to note, however, is that only

the underlings of Lindsey who were doing work on Poe's behalf can be counted towards Poe's total number of people supervised. *See United States v. Ward*, 37 F.3d 243, 250 (6th Cir.1994) ("if some of these supervisees were working on a different project for [Lindsey]-a project not furthering the interests of [Poe]-then they were not indirectly controlled by [Poe].").

4. We note that the briefs do not make clear whether those who delivered marijuana to Poe were suppliers/sellers in the sense that the sales took place from them to Poe or his associates, or were couriers hired by Poe. If hired by Poe, they would presumably have been "managed" by Poe.

nized that an organizer need not control those whom he organizes but only need "arrange[ ] their activities into an orderly operation." *Id.* at 823. The Eleventh Circuit also recognized that while there may be cases where the drug buyer organizes his supplier, that will not be the usual situation. "Buyers and sellers often need to accommodate one another when meeting and arranging for delivery. Such conduct is simply incidental to the buyer-seller relationship." *Id.* Thus, organizing for CCE purposes requires more than simply coordinating various players; it requires some exercise of managerial authority.

In *Williams–Davis*, the D.C. Circuit likewise followed the *Jerome* court's lead. As explained by the D.C. Circuit, suppliers are not per se excluded from being "organized," but there must be a "managerial relationship" between the organizer and the "organized." Concluding that an "actual managerial relationship" is the crux of the CCE requirement, the court agreed that this requirement is "not displaced for suppliers or customers." *Williams–Davis*, 90 F.3d at 509 (citing *United States v. Mitchell*, 49 F.3d 769, 772 (D.C.Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 327, 133 L.Ed.2d 228 (1995); *Ward,* 37 F.3d at 248.)

No other circuit has had the opportunity to address the question directly. *See, e.g., United States v. Sotelo*, 97 F.3d 782, 789 (5th Cir.1996) (discussing only that defendant "organized, supervised or managed" with no distinction among terms), *cert. denied,* —— U.S. ——, 117 S.Ct. 620, 136 L.Ed.2d 543 (1996) & —— U.S. ——, 117 S.Ct. 1002, 136 L.Ed.2d 881 (1997) & —— U.S. ——, 117 S.Ct. 1324, 137 L.Ed.2d 486 (1997); *United States v. Edmonds*, 52 F.3d 1236, 1239 (3d Cir.1995) (same), *reh'd en banc,* 80 F.3d 810 (3d Cir.) (reh'd on different issue), *cert. denied,* —— U.S. ——, 117 S.Ct. 295, 136 L.Ed.2d 214 (1996); *United States v. Rockelman*, 49 F.3d 418, 420–21 (8th Cir.1995) (same); *United States v. Herrera–Rivera*, 25 F.3d 491, 498 (7th Cir.1994) (same); *United States v. Hahn*, 17 F.3d 502, 506 (1st Cir.1994) (same); *see also United States v. Elder*, 90 F.3d 1110, 1122 (6th Cir.1996) ("Merely proving that

five people were in a buyer-seller relationship with the alleged organizer or supervisor is not sufficient to show management."), *cert. denied,* —— U.S. ——, 117 S.Ct. 529, 136 L.Ed.2d 415 (1996) & —— U.S. ——, 117 S.Ct. 529, 136 L.Ed.2d 415 (1996) & —— U.S. ——, 117 S.Ct. 993, 136 L.Ed.2d 873 (1997); *cf. United States v. Hall*, 93 F.3d 126, 130, 130–31 (4th Cir.1996) ("the term organizer and the term supervisory position and position of management are to be given their usual and ordinary meanings. These words imply the exercise of power or authority by a person who occupies some position of management or supervision" and "[t]he 'usual and ordinary' meaning of manager or supervisor does not include a mere buyer-seller relationship. Buyer-seller relationships are not characterized by 'the exercise of power or authority.'"), *cert. denied,* —— U.S. ——, 117 S.Ct. 1087, 137 L.Ed.2d 220 (1997).

As we have recently noted, the law regarding buyer-seller transactions, in the context of conspiracy law, has been evolving:

[m]ore recently, however, we have clarified the law ... pointing out that, while purchase of narcotics for resale is evidence of a conspiratorial agreement (especially when the purchases are repeated ... ), a buyer-seller relationship alone is insufficient to prove a conspiracy. This is the case even when the buyer intends to resell the purchased narcotics. *United States v. Townsend*, 924 F.2d 1385, 1394 (7th Cir. 1991) ("The buy-sell transaction is simply not probative of an agreement to join together to accomplish a criminal objective beyond that already being accomplished by the transaction."); *United States v. Lechuga*, 994 F.2d 346, 349 (7th Cir.1993) (en banc) ("Insofar as there was an agreement between [the defendants] merely on the one side to sell and on the other to buy, there was no conspiracy between them no matter what [the buyer] intended to do with the drugs after he bought them.").

*United States v. Mims*, 92 F.3d 461, 465 (7th Cir.1996). With respect specifically to CCE, we have stated that "[t]he government must

---

In any event, the government does not dispute Poe's insistence that he did not "manage" the

individuals referred to in its closing argument.

only show that the defendant exerted some type of influence over five other individuals in the course of the criminal enterprise," but did so in a case where the defendant in fact was shown to have exercised significant supervision and control. *United States v. Rogers*, 89 F.3d 1326, 1334–35 (7th Cir.) (defendant demanded percentage of proceeds, paid various individuals for services and purposefully generated reputation as a violent person intolerant of dissent), *cert. denied*, —— U.S. ——, 117 S.Ct. 495, 136 L.Ed.2d 387 (1996). In another of our cases, *United States v. Gibbs*, 61 F.3d 536, 538 (7th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 543, 133 L.Ed.2d 446 (1995), we quoted the same language but found that the defendant had in fact controlled numerous other individuals.

We find the reasoning of *Jerome* and *Witek* and like cases persuasive and we believe that an "organizer" for purposes of 21 U.S.C. § 848(c)(2)(A) must exercise some form of managerial authority over the individuals alleged to be organized. For example, " 'simply purchasing cocaine from the 'organizer' standing alone is not enough to satisfy the relationship requirement.' " *Ward*, 37 F.3d at 247 (quoting United States v. English, 925 F.2d 154, 157 (6th Cir.1991)). Further, " 'the mere 'fronting' of cocaine *alone* is insufficient to support finding a management relationship.' " *Id.* at 248 (quoting *United States v. Possick*, 849 F.2d 332, 336 (8th Cir.1988)) (emphasis supplied). "Fronting cocaine, without additional elements of control, is nothing more than a variation on the traditional buyer-seller relationship." *Id.; but see United States v. Apodaca*, 843 F.2d 421, 427 (10th Cir.1988) (defendant fronted, but "carefully controlled the supply going to these dealers, giving them a few ounces at a time."). On the other hand, giving directions, even if followed, about where to meet for the drug purchase without more evidence of management, would not support the CCE requirement. *Ward*, 37 F.3d at 249. In any event, since there was no objection at trial to the argument now claimed to be reversible error, there is no adequate basis for reversing Poe's conviction.

The conviction and sentence of Howland is AFFIRMED. The convictions of Lindsey and Poe are AFFIRMED in part, REVERSED in part

and REMANDED for further proceedings not inconsistent with this opinion.