139 F.3d 902
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
United States of America, Plaintiff-Appellee,
v.
William E. HAWKINS, Defendant-Appellant.
 No. 97-1346.
 United States Court of Appeals, Seventh Circuit.
 Argued Dec. 12, 1997.
Decided Mar. 5, 1998.
 
 Appeal from the United States District Court for the Southern District of Illinois. No. 90 CR 30067 William D. Stiehl, Judge.
 Before Honorable WALTER J. CUMMINGS, Honorable ILANA DIAMOND ROVNER, Honorable DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 A jury convicted William Edgar Hawkins on charges that he conspired to distribute (and to possess with the intent to distribute) cocaine and marijuana (see 21 U.S.C. § 846), distributed cocaine (21 U.S.C. § 841(b)(1)(B)), engaged in a continuing criminal enterprise (21 U.S.C. § 848), and conspired to travel in interstate commerce in aid of racketeering (18 U.S.C. § 371). The district court ordered Hawkins to serve a total prison term of 420 months. Hawkins raises seven issues on appeal, which we take up seriatim after a brief summary of the facts.
 
 I.
 
 2
 For approximately six years, from 1984 to 1990, Hawkins headed a criminal enterprise based in Southern Illinois that had two principal facets: the distribution of cocaine and marijuana, and the commission of interstate burglary and robbery. Hawkins obtained some of the narcotics in straightforward transactions with suppliers. In other instances, however, he and his associates simply stole the drugs from other dealers. Sales were conducted by persons to whom Hawkins typically fronted the cocaine and marijuana. Hawkins and his associates also burglarized homes throughout the Midwest.[1] In many instances, the drug distributors took part in the burglaries as a way to pay Hawkins for the narcotics that he had fronted to them.
 
 
 3
 In 1988, one of Hawkins' associates, Ted McKinney, began cooperating with the Federal Bureau of Investigation. In his new role as a cooperating witness, McKinney purchased cocaine from Hawkins on five occasions between November of 1988 and August of 1989. Hawkins was eventually indicted in the Eastern District of Missouri for these sales and a jury found him guilty in December 1990; he was subsequently ordered to serve a prison term of sixty-three months. See United States v. Hawkins, 78 F.3d 348 (8th Cir.), cert. denied, 519 U.S. 844, 117 S.Ct. 126, 136 L.Ed.2d 76 (1996). In October of 1990 a grand jury in the Southern District of Illinois indicted Hawkins on the charges at issue here.
 
 II.
 A. Double Jeopardy
 
 4
 In order to prove a defendant guilty of operating a continuing criminal enterprise, the government must establish, inter alia, that the defendant committed a felony violation of the federal narcotics laws and that such violation was part of a continuing series of related violations of the federal narcotics laws. 21 U.S.C. § 848(c); see, e.g., United States v. Lindsey, 123 F.3d 978, 984 (7th Cir.1997); United States v. Rogers, 89 F.3d 1326, 1335 (7th Cir.), cert. denied, --- U.S. ----, 117 S.Ct. 495, 136 L.Ed.2d 387 (1996). Among the evidence that the government pointed to as proof of the requisite "series" of violations were five drug transactions for which Hawkins had previously been convicted in the Eastern District of Missouri. Hawkins argues that because he had already been convicted and sentenced on charges arising from those transactions by the time he was tried in this case, the Double Jeopardy Clause precluded the government from relying on them as the predicate narcotics offenses that section 848 requires.
 
 
 5
 That argument finds a considerable obstacle in Garrett v. United States, 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985). The Supreme Court in Garrett concluded that a CCE conviction based in part upon evidence that the defendant had imported marijuana into the country did not run afoul of the Double Jeopardy Clause, notwithstanding the fact that the defendant had previously pled guilty to the marijuana smuggling. Garrett makes clear that the defendant's prior conviction on one of the predicate acts underlying the CCE conviction does not necessarily implicate double jeopardy concerns. However, the Court stressed in Garrett that the defendant's prior conviction did not represent the sum total of the conduct underlying the CCE charge; to the contrary, a significant portion of the government's case in support of the CCE charge rested upon criminal activity that the defendant undertook after his prior conviction. See id. at 792-93, 105 S.Ct. at 2418; see also id. at 798, 105 S.Ct. at 2421 (O'Connor, J., concurring).
 
 
 6
 Hawkins contends that his case differs in that key respect from Garrett because, as he sees it, the jury may have relied exclusively on the five transactions underlying his Missouri convictions to find that he committed the "series" of narcotics transactions required for culpability under section 848. Confirming that possibility as likely, Hawkins argues, is the jury's inquiry during deliberations whether it could consider the five distributions of cocaine for which Hawkins had been convicted in the Eastern District of Missouri as evidence in assessing his liability on the CCE charge (Tr. May 21, 1992 at 55; R. 355 Note No. 1), a question that the district court answered in the affirmative.[2]
 
 
 7
 Having reviewed the record, however, we conclude that the CCE conviction rests upon more than the Missouri convictions and that Garrett therefore controls this case. Consistent with our opinion in United States v. Baker, 905 F.2d 1100, 1102-05 (7th Cir.1990), cert. denied, 498 U.S. 876, 111 S.Ct. 206, 112 L.Ed.2d 167, and cert. denied sub nom. Manns v. United States, 498 U.S. 904, 111 S.Ct. 270, 112 L.Ed.2d 226 (1990), and cert. denied sub nom. Manns v. United States, 498 U.S. 1030, 111 S.Ct. 686, 112 L.Ed.2d 677 (1991), the district court instructed the jury that the "series" element of the CCE charge required proof that the defendant committed two or more substantive violations of the federal narcotics laws. Tr. XVII 185-86; Government Proposed Instr. No. 14. One of those predicate acts was specified for the jury--the distribution of cocaine charged in Count Two of the second superseding indictment. Tr. XVII 186; Government Proposed Instr. No. 14.[3] That act--which the jury of course found Hawkins to have committed (R. 357)--formed no part of the basis for Hawkins' Missouri convictions; on the contrary, the importation took place some twenty months prior to the first of the Missouri sales. See R. 200 at 6; Tr. VII 64, 68-80; Tr. VIII 29-30, 35, 82-83. Per the court's instructions, the jury needed to find at least one more related narcotics violation to meet the "series" requirement of the charge. Among the candidates were the five 1988-89 cocaine sales for which Hawkins had been convicted in the Eastern District of Missouri. Those transactions were listed as predicate acts in the second superseding indictment (R. 200 at 7, pp 1-3, 5-6), and the government cited them in its closing argument. Tr. XVII 219. But the indictment itself alleged that Hawkins had engaged in the continuing criminal enterprise from in or around 1984 until approximately September 1990. R. 200 at 6. In addition to the 1987 cocaine sale in charged in Count Two, there was a series of other narcotics transactions that the government cited as potential predicate acts. See Tr. XVII 219; Tr. XV 12-13. We have no ground to believe, simply because the jury asked whether it could consider the facts underlying the Missouri convictions as "evidence" relevant to the CCE charge (see R. 355 Note No. 1), that these were the sole transactions it found to be predicate acts. Nothing in that question reasonably suggests that the jury was focusing on those transactions to the exclusion of others that could be considered predicate acts. Nor can we assume that the jury settled on the Missouri convictions as the additional predicate acts simply because, as Hawkins points out, those were the only potential predicate acts he admitted committing. E.g., Hawkins Br. at 19-20. Finally, even if, as Hawkins suggests, he did nothing that would qualify as a predicate act following the conduct for which he was convicted in Missouri--a suggestion contradicted by the testimony (see, e.g., Tr. II 208-09)--that by itself poses no bar to the CCE conviction. See United States v. O'Connor, 953 F.2d 338, 344 (7th Cir.), cert. denied, 504 U.S. 924, 112 S.Ct. 1979, 118 L.Ed.2d 578 (1992). For all of these reasons, we conclude that prosecution, conviction, and sentencing on the CCE charge did not violate the Double Jeopardy Clause.
 
 
 8
 The government concedes, however, that Rutledge v. United States, 517 U.S. 292, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996), requires us to vacate the conviction on the conspiracy charge set forth in Count One of the second superseding indictment, as that charge is a lesser included offense of the continuing criminal enterprise charged in Count Three. Government Br. 11. We shall therefore vacate Hawkins' conviction on Count One. That step will, at a minimum, relieve Hawkins of the obligation to pay the $50 special assessment associated with his conviction on that charge. See Tr. Aug. 13, 1993 at 19; R. 404 at 1.
 
 B. Evidentiary Rulings
 
 9
 Hawkins contends that the district court made a number of evidentiary rulings that were mistaken. These include repeated admissions of out-of-court statements which, according to Hawkins, did not meet the criteria for the admission of co-conspirator statements under FED. R. EVID. 801(d)(2)(E); the admission of testimony concerning drug use by Hawkins, which as Hawkins sees it was not within the scope of the indictment; the admission of testimony concerning uncharged crimes; and the failure to establish a chain of custody permitting the introduction of certain exhibits (including in particular recorded conversations involving Hawkins) that had been used in the Eastern District of Missouri prosecution. The cumulative effect of those errors deprived him of a fair trial, Hawkins argues, given the credibility questions raised as to the witnesses against him and the lack of independent evidence corroborating their testimony vis a vis the conspiracy with which he was charged.
 
 
 10
 We have carefully reviewed the entire record, and we have discovered no evidentiary error that deprived Hawkins of a fair trial, whether considered in isolation or in conjunction with the other purported errors. Hawkins himself has done little to address these errors individually in his opening brief, beyond cursorily listing them and supplying citations to the record. See Hawkins Br. at 22-26. To its credit, the government has devoted more than twenty pages of its brief identifying the context of each of the rulings alluded to in Hawkins' brief and offering an explanation as to why, in its view, each ruling was appropriate. Government Br. 14-36. The district court, of course, enjoys broad discretion in evidentiary matters, and our review is deferential. E.g., United States v. Hubbard, 61 F.3d 1261, 1272 (7th Cir.1995), cert. denied, 516 U.S. 1175, 116 S.Ct. 1268, 134 L.Ed.2d 216 (1996); see also Old Chief v. United States, 519 U.S. 172, ---- n. 6, 117 S.Ct. 644, 651 n. 6, 136 L.Ed.2d 574 (1997). We have, as we have indicated, examined the record and we have considered each of the rulings that Hawkins has challenged in scattershot fashion. None of the rulings Hawkins has cited (several of which were in his favor) strikes us as an abuse of discretion, and alternatively we are convinced that if error did occur, it was not sufficiently prejudicial to merit a new trial.
 
 C. Prosecutorial Misconduct
 
 11
 Hawkins also alleges that the government engaged in prejudicial misconduct when, during the examination of witnesses, it made references to Hawkins and his "organization" or "gang." We typically engage in a two-step process analysis when confronted with claims that the prosecution made improper remarks: first we consider whether the remark in question was indeed improper and, if it was, we look to a variety of factors, including the nature and seriousness of the misconduct, to determine whether the defendant was deprived of a fair trial. E.g., United States v. McClinton, Nos. 96-3143, 96-3206, 96-3229, 1998 WL 45206, * 11-12 (7th Cir. Feb.6, 1998); United States v. Laurenzana, 113 F.3d 689, 695 (7th Cir.), cert. denied, --- U.S. ----, 118 S.Ct. 240, 139 L.Ed.2d 170 (1997).
 
 
 12
 We have considered the passages in question and conclude that none of the references cited by Hawkins were so grave as to have imperilled his right to a fair trial. In two instances, the prosecution asked a series of questions that described the relationship between Hawkins and his co-conspirators as an "organization"--it asked Cloyce House, for example, whether she had been a member of a drug organization, what types of drugs the organization was distributing, and from what sources the organization obtained its narcotics (Tr. IV 5-6; see also Tr. IV 39). The defense belatedly objected to the use of the term "organization," and the district court sustained the objection. Tr. IV at 39-40. We can certainly appreciate why the district court sustained the objection to the use of this term, given that the nature of the relationship between Hawkins and his alleged co-conspirators was of course a significant issue in the case. But the word that the prosecutor used to describe that relationship is by no means inflammatory, and nothing in the record suggests that the prosecutor deliberately used it in an effort to evade its burden of proof or to accomplish some other improper purpose. Indeed, when the defense voiced an objection and it was sustained, the prosecutor never used it again. We see no misconduct there. The use of the term "gang" is more serious--it not only implies a relationship between Hawkins and his co-conspirators, but arguably connotes the type of violence and criminal activity often associated with today's street gangs. However, the word was used only once (the witness was asked whether he had told an agent that another individual had fenced stolen property for him "and other members of the Bill Hawkins gang"), and the objection was swiftly sustained. Tr. V at 75-77. In the context of a trial that took place over five weeks, the remark was minor and, we are confident, had no impact on the jury's evaluation of the evidence.
 
 
 13
 D. Removal of Counsel for Potential Conflict of Interest
 
 
 14
 In advance of trial, the district court removed Hawkins' long-time counsel, J. William Lucco, based on a potential conflict of interest. Lucco had disclosed to the court that he had previously represented two of the government's witnesses against Hawkins--Jody Wesley, a named co-defendant, who had pled guilty, and Jody's wife, Kathy Wesley. Lucco's firm had also represented Larry Blankenship, another of Hawkins' co-defendants. The court noted that Article VIII, Rule 1.7(b) of the Illinois Rules of Professional Conduct prohibits a lawyer from representing a client "if the representation of that client may be materially limited by the lawyer's responsibilities to another client ...." At the same time, Rule 1.9(2) bars a lawyer who has formerly represented a client from "us[ing] [private] information relating to the representation to the disadvantage of the former client[.]" R. 81 at 3. Should Lucco continue as Hawkins' attorney, he might therefore face an ethical dilemma.
 
 
 15
 The Court cannot ignore the possibility that Lucco might be faced with the dilemma of whether to impeach these former clients with information gained while representing those clients. Alternatively, Lucco might not cross-examine the former clients as vigorously as other witnesses. Further, in the event co-defendant Blankenship would decide to testify in his own defense, Lucco may be faced with the same dilemma.
 
 
 16
 R. 81 at 4. For these reasons, the court concluded that its "obligation to protect the defendant's constitutional right to effective assistance of counsel, as well as the public's interest in conflict-free representation, outweigh the defendant's interest in the continued representation by the attorney of his choice." R. 81 at 4.
 
 
 17
 Hawkins contends that the court erred in dismissing Lucco when he himself had waived any potential conflict; but we find no abuse of discretion in the court's decision. Hawkins himself has on appeal repeatedly questioned the veracity of the government's witnesses (see, e.g., Hawkins Br. 5-11), most of whom were themselves participants in his criminal enterprise, and attacking their credibility was obviously a key element of his defense (see, e.g., Tr. May 21, 1992 at 13, 15, 28-29). Consequently, we have no reason to disagree with the district court's belief that Lucco might well be forced to choose between maintaining the confidences of his (and his firm's) former clients and zealously attacking the credibility of those same individuals in the representation of Hawkins.
 
 
 18
 E. Failure to Instruct Jury on Multiple Conspiracies
 
 
 19
 The district court rejected Hawkins' request (Tr. XVII 28; see Defendant's Proposed Instr. No. 17) for a multiple conspiracies charge, see Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), and Hawkins contends that it did so erroneously. However, even assuming that the evidence in this case was consistent with multiple conspiracies, the court gave an instruction (Tr. XVII 193; Defendant's Proposed Jury Instr. No. 22) that we have repeatedly approved as adequate to meet the concerns identified in Kotteakos. See United States v. Blanding, 53 F.3d 773, 776 (7th Cir.1995) (finding nearly identical instruction adequate although evidence supported multiple conspiracies and district court could have given Kotteakos instruction); United States v. Smith, 995 F.2d 662, 669-70 (7th Cir.1993) (instruction deemed sufficient to present defendants' theory of multiple conspiracies), cert. denied sub nom. Marren v. United States, 510 U.S. 1056, 114 S.Ct. 718, 126 L.Ed.2d 683 (1994); United States v. Canino, 949 F.2d 928, 940-41 (7th Cir.1991) (sustaining instruction on plain error review), cert. denied sub nom. Flynn v. United States, 503 U.S. 996, 112 S.Ct. 1701, 118 L.Ed.2d 410, and cert. denied, 504 U.S. 910, 112 S.Ct. 1940, 118 L.Ed.2d 546, and cert. denied sub nom. Marcum v. United States, 504 U.S. 915, 112 S.Ct. 1954, 118 L.Ed.2d 558 (1992); United States v. Lyons, 670 F.2d 77, 79 (7th Cir.) (finding instruction proper), cert. denied, 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982). As we observed in Smith, "Read as a whole, the instruction stresses that the defendant[] may only be convicted for the conspiracy charged in the indictment." 995 F.2d at 670 (emphasis in original). We find no error in the failure to give the additional instruction.
 
 
 20
 F. Criminal History Points Attributed to Missouri Convictions
 
 
 21
 In assessing Hawkins' criminal history, the probation officer included among his "prior sentences of imprisonment" the sixty-three-month term imposed upon his prior convictions in the Eastern District of Missouri and assigned him three criminal history points for that sentence. R. 399 at 11; see U.S.S.G. § 4A1.1. Considered in addition to Hawkins' other prior prison terms, the sentence imposed in the Eastern District of Missouri placed him in a criminal history category of VI. The district court adopted the probation officer's assessment. See Tr. Aug. 13, 1993 at 5. However, the Guidelines define a "prior sentence" to include "any sentence previously imposed upon adjudication of guilt, ... for conduct not part of the instant offense." § 4A1.2(a)(1) (emphasis supplied). The commentary explains that conduct which is "part of the instant offense" includes "conduct that is relevant to the instant offense under the provisions of § 1B1.3 (Relevant Conduct)." Id. (comment.) (n. 1). Although he did not raise the issue below, Hawkins now points out, and the government concedes, that the conduct underlying Hawkins' Missouri convictions is conduct that is relevant to the CCE conviction. Government Br. 49. Consequently, it was error to include the Missouri sentence in the criminal history calculation. Had the criminal history been calculated correctly, it would have been Category V and not VI. See U.S.S.G., Chapter 5, Part A. However, the government suggests that even if Hawkins did not waive the error, remand is not required because the applicable sentencing range still would have been 360 months to life nonetheless. Id.
 
 
 22
 It may be, as the government suggests, that the error had no impact on the court's decision to sentence Hawkins to a prison term of 420 months. However, in light of the fact that we are vacating the conspiracy conviction and in view of the length of the sentence, in the abundance of caution we shall remand for re-sentencing to eliminate any doubt that the error tainted the sentence.
 
 G. Variance
 
 23
 At oral argument, Hawkins' counsel suggested for the first time that there may be a variance between the second superseding indictment and the proof at trial with respect to the second element of Count Three. Any claim of variance has been waived, however, for the failure to raise it previously. E.g., United States v. Aquilla, 976 F.2d 1044, 1051-52 (7th Cir.1992).
 
 III.
 
 24
 For the foregoing reasons, we VACATE Hawkins' conviction on Count One of the second superseding indictment and AFFIRM Hawkins' convictions on the other counts of that indictment. In view of the vacated conspiracy conviction and the error in calculating Hawkins' criminal history category, we VACATE Hawkins' sentence and remand for re-sentencing. In view of the narrow grounds on which we have vacated the judgment, the district court is not obliged in re-sentencing Hawkins to entertain any sentencing issues not previously raised or which it has already ruled upon.
 
 
 25
 AFFIRMED IN PART, VACATED IN PART, and REMANDED.
 
 
 
 [1]
 Members of the enterprise would typically target the homes of prosperous professionals (lawyers and doctors, for example), whom they identified using local telephone directories. Homes belonging to Rosemary Clooney and the warden of the federal penitentiary at Terre Haute, Indiana were among those identified as possible targets, but these homes were not ultimately burgled
 
 
 [2]
 The district court instructed the jury that it could "consider this evidence along with all of the other testimony and exhibits that have been introduced into evidence." R. 355, Response to Note No. 1
 
 
 [3]
 United States v. Felix, 503 U.S. 378, 389-92, 112 S.Ct. 1377, 1384-85, 118 L.Ed.2d 25 (1992), of course, permits a prosecution for conspiracy or continuing criminal enterprise even if the defendant has previously been convicted of one or more of the substantive offenses on which the conspiracy or CCE charge is based. See also Rutledge v. United States, 517 U.S. 292, 116 S.Ct. 1241, 1247 n. 12, 134 L.Ed.2d 419 (1996)