**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Shawn FISHER, Defendant–Appellant.**

**No. 01–2969.**

United States Court of Appeals,
Seventh Circuit.

Argued March 6, 2002.

Decided June 10, 2002.

Before POSNER, EVANS, and WILLIAMS, Circuit Judges.

## ORDER

Shawn Fisher pleaded guilty to conspiracy to possess with intent to distribute more than 500 grams of cocaine. 21 U.S.C. §§ 846, 841(a)(1). On appeal Fisher challenges only his three-level upward adjustment for managing or supervising a criminal activity having at least five participants. We affirm.

## BACKGROUND

Shawn Fisher was a cocaine user whose habit increased in 1999 while he studied at the University of Wisconsin–Stout. As his cocaine-related expenses increased, Fisher became a drug dealer to support his habit. After obtaining cocaine locally and from Minneapolis for several months, Fisher in October 1999 contacted a fellow student and drug dealer who connected him with drug suppliers in Arlington, Texas.

Fisher and his close friend Joe "Bubbles" Bryan planned a trip to Texas to purchase marijuana. Fisher, who was not going to Texas on this first trip, recruited Nate Wold and Chris Mullens to join "Bubbles" and another friend, Peter Philen, on the trip. Fisher gave the group $10,000 with which to buy drugs and left "Bubbles" in charge of the money. In Texas, the group decided that marijuana was too expensive, and after consulting with Fisher instead bought 255 grams of cocaine.

Various combinations of this group made eight additional trips between October and December 1999 to purchase drugs in Texas, and Fisher went on two of those trips. After someone from outside the group stole the purchase money during the third trip, Fisher decided to make the fourth and take along Jeremy Fern, telling him that "bigger guys" were needed in the group to prevent further thefts. Fisher provided some or all of the purchase money for at least four of the nine trips, and in two other instances instructed his cohorts to wire his funds to Texas when additional money was needed. Fisher sometimes paid group members for traveling to Texas. For example, he paid Wold and Mullens in cash and/or cocaine for joining trips to Texas and paid another man he recruited, Chris Ella–Kinney, with cash and a credit against a drug debt owed to Fisher and "Bubbles." According to Fisher's PSR, "Fisher claimed the right to a larger share of the fruits of the crime as he provided the majority of the financial backing." After the ninth trip, the group disintegrated despite Fisher's efforts to keep it together.

Police started an investigation into the group shortly after it began trafficking. On January 23, 2001, police raided Fisher's apartment, finding four ounces of cocaine, a handgun, and $1,300 that Fisher admitted came from drug sales.

Fisher pled guilty to conspiracy to possess with intent to distribute more than 500 grams of cocaine. The district court assigned Fisher a base offense level of 28. It then added two levels for possessing a dangerous weapon and three levels for managing or supervising a criminal enterprise involving five or more participants. The court then subtracted three levels for acceptance of responsibility, yielding a total offense level of 30. That, combined with Fisher's Category IV criminal history, yielded a sentencing range of 135 to 168 months' imprisonment. The court sentenced Fisher to 156 months.

## DISCUSSION

The single issue Fisher raises on appeal is whether the district court erred in giving him a three-level increase for having a managerial role. The sentencing guidelines require that "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by three levels." U.S.S.G. § 3B1.1(b). In this instance the district court found that Fisher recruited at least four members of the conspiracy (Fern, Wold, Mullens, and Ella–Kinney); paid them with cash, drugs, or credits against drug debts; invested more money than the others to buy drugs; kept a greater share of the profits; and assumed a greater role than others in planning and organizing the trips to Texas.

The goal of § 3B1.1 is to punish based on a defendant's relative responsibility within a criminal enterprise. *United States v. Gracia*, 272 F.3d 866, 876 (7th Cir.2001). In applying this guideline, sentencing courts are to look at "the exercise of decision-making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." U.S.S.G. § 3B1.1, comment. (n.4). But not all of these factors must be present. *Gracia*, 272 F.3d at 877. At a minimum the defendant must have "exercised some control over others involved in the commission of the offense," such as by "orchestrating or coordinating the activities of others." *Id.* An upward adjustment is inappropriate where the defendant played no greater role in the crime than any other participant. *Id.* at 876. Whether a defendant is a manager or supervisor is an issue of fact we review for clear error. *Id.*

Fisher contends that the evidence did not support the district court's conclusion that he managed or supervised the trips to Texas. But the facts demonstrate that Fisher played a greater role than others in the conspiracy. *See United States v. Fones*, 51 F.3d 663, 667 n. 3 (7th Cir.1995) (increase under § 3B1.1 appropriate where defendant has greater role than at least one other member). First, the PSR states that Fisher recruited at least four of the conspiracy's seven members. *See* U.S.S.G. § 3B1.1, comment. (n.4) (recruitment is evidence of a managerial role); *see also United States v. Pippen*, 115 F.3d 422, 424 (7th Cir.1997) (management adjustment supported by defendant's recruitment of at least one co-conspirator). The PSR also shows that Fisher financed, in whole or in part, the trips to Texas and employed others to wire money to Texas, thereby demonstrating his authority over co-conspirators. *See Gracia*, 272 F.3d at 877 (defendant's instructions to wire cash he provided to co-conspirators supported court's conclusion that defendant had control over others). Fisher also paid others to make the trips to Texas, showing his greater involvement in the crime, his authority over others, and his involvement in planning the trips. *See United States v. Lindsey*, 123 F.3d 978, 980 (7th Cir.1997) (management adjustment supported by defendant's employment of others). The district court also found that Fisher kept a greater share of the profits earned by the group. *See* U.S.S.G. § 3B1.1, comment. (n.4) (keeping a greater share of profits is evidence of a managerial role). These facts taken together show that the district court's decision to give Fisher a three-level managerial enhancement was not clearly erroneous.

As to this last factor, division of the profits, Fisher argues that insufficient evidence supports the district court's conclusion that he claimed a larger share. The district court based its finding on the probation officer's statement that "Fisher claimed the right to a larger share of the fruits of the crime," a statement that Fisher argues is impermissibly vague. But Fisher never objected to the PSR's statement and has affirmatively stated in his brief on appeal that he does not object to the facts in the PSR. Therefore he has waived any objection to it on appeal. *See United States v. Staples,* 202 F.3d 992, 995 (7th Cir.2000). Even if Fisher had not waived this argument, it would fail. If a district court relies on information in a PSR for sentencing, it is up to the defendant to show that the PSR is unreliable or inaccurate. *See United States v. Taylor,* 72 F.3d 533, 543 (7th Cir.1995). But the defendant does not meet this burden by merely denying the PSR's contents. *See United States v. Purchess,* 107 F.3d 1261, 1268 (7th Cir.1997). Instead, the defendant must produce "some evidence that calls the reliability or correctness of the alleged facts into question." *United States v. Mustread,* 42 F.3d 1097, 1102 (7th Cir. 1994) (citation and internal quotations omitted). Fisher has presented no evidence that undermines the reliability of the PSR and has thus failed to meet his burden.

AFFIRMED.